STOP H–3 ASSOCIATION et al., and Hui Malama Aina O Ko'olau et al., Appellants,

v.

William T. COLEMAN, Jr.,* as Secretary of the United States Department of Transportation, et al., Appellees.

No. 75–1552.

United States Court of Appeals, Ninth Circuit.

· March 8, 1976.

Rehearing and Rehearing En Banc Denied May 21, 1976.

---

* Originally, the Federal appellee was Claude S. Brinegar, then Secretary of Transportation. His successor has been substituted under the authority of Rule 43(c), Fed.R.App.P.

Boyce R. Brown, Jr. (argued), Honolulu, Hawaii, for appellants.

Warren H. Higa, Asst. U. S. Atty., and Melvin Y. Nishimoto, Deputy Atty. Gen. (argued), Honolulu, Hawaii, for appellees.

## OPINION

Before KOELSCH, ELY and WALLACE, Circuit Judges.

ELY, Circuit Judge:

The Moanalua Valley, a beauteous natural wonder that many believe to be of great significance in Hawaiian history,[1] lies on Hawaii's Island of Oahu, directly in the path of a proposed Interstate Highway called H–3. The principal issue on this appeal is whether Moanalua qualifies for protection as an "historic site of . . . State, or local significance" under section

---

1. According to the Advisory Council on Historic Preservation,

The historical and cultural significance of the [Moanalua] [V]alley stems from Hawaiian folklore and tradition and continues into the 20th century. The valley contains Kamanui, the valley of the great power, and Waolani, the valley of the spirits which was, in tradition, "the dwelling place of the gods." The forest of the valley retains a traditional natural state associated with the legend and history of the area.

The valley was the property of the royal house of Oahu, the scene of battles and other exploits which are extolled in the ancient Hawaiian chants, the Kahikilaulani. After King Kamehameha conquered the island of Oahu in 1796, the valley was the home of his supporters and eventually passed, in 1848, to his grandson, King Kamehameha V, then to Princess Ruth Keelikolani in 1872, and, upon her death, to her cousin, Princess Bernice Pauhi Bishop who willed it, in 1883, to her friend, Samuel Mills Damon. .

Advisory Council on Historic Preservation, Comments on an Undertaking by the Federal Highway Administration Having an Effect upon Pohaku ka Luahine and Moanalua Valley, Oahu, Hawaii (August 7–8, 1974) (hereinafter referred to as "Advisory Council, Comments ").

4(f) of the Department of Transportation Act of 1966, as amended, 49 U.S.C. § 1653(f) (1970), and section 18 of the Federal-Aid Highway Act of 1968, 23 U.S.C. § 138 (1970). (Both statutes, which are essentially identical, are hereinafter referred to simply as "section 4(f)".[2]) Relying on a published determination by the Secretary of the Interior that Moanalua is eligible for inclusion in the National Register of Historic Places, the appellants[3] contend that section 4(f) applies. The appellees,[4] who rely primarily on a determination by Hawaii State officials that Moanalua is only of "marginal" historic significance, argue that section 4(f) is inapplicable to the routing of H–3 through the Valley. Agreeing with the appellees, the District Court dissolved the injunctions that it had previously entered against construction of the highway.[5] *Stop H–3 Ass'n v. Brinegar,* 389 F.Supp. 1102 (D.Hawaii 1974). We reverse.

## I. *Statutory Background*

Public interest in preservation of the physical reminders of our Nation's past has prompted Congress to implement a strong national policy in favor of historic preservation. *See* 16 U.S.C. §§ 461, 470; 23 U.S.C. § 138; 49 U.S.C. § 1653(f) (1970). In section 4(f), Congress has determined that historic preservation should be given major consideration in connection with all proposed highway construction programs that are to receive financial aid from the federal government. The statute provides, in declaring national policy, that " . . . special effort should be made to preserve . . . historic sites." The statute further provides that before the Secretary of Transportation [hereinafter "the Secretary"] may approve the use of Federal funds for a highway that will "use" land from " . . . an historic site of national, State, or local significance as so determined by [the Federal, State, or local officials having jurisdiction thereof]," he must determine that no "feasible and prudent" alternative route exists. If there is no "feasible and prudent" alternative, the Secretary may approve the project only if there has been " . . . all possible

2. Section 4(f) states:

It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After August 23, 1968, the Secretary shall not approve any program or project which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.
49 U.S.C. § 1653(f) (1970).

3. The appellants are the Stop H–3 Ass'n, the Moanalua Valley Community Ass'n, the Kaiku Village Community Ass'n, Life of the Land, the Moanalua Garden Foundation, all of which are non-profit organizations chartered for the purposes of opposing the construction of H–3 or preserving the Moanalua Valley, and several named individuals.

The National Wildlife Federation has filed a brief as *amicus curiae,* supporting the appellants.

4. Appellees are the Secretary of Transportation, the Hawaii Division Engineer for the Federal Highway Administration, and the Director of the Department of Transportation of the State of Hawaii.

5. The prolonged history of the present controversy in the District Court is thoroughly and carefully reviewed in the District Court's Opinion. *Stop H–3 Ass'n v. Brinegar,* 389 F.Supp. 1102, 1105–07 (D.Hawaii 1974).

We have hitherto issued an injunction designed, pending the disposition of this appeal, to prevent irreversible damage or destruction of the natural environment involved in the controversy. That injunction will remain in effect pending the eventual disposition of the appeal and the issuance of a new injunction by the District Court in conformity with our conclusion.

planning to minimize harm . . . ." to the historic site. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 411–13, 91 S.Ct. 814, 821, 28 L.Ed.2d 136, 150 (1971). The requirements are stringent. Congress clearly reflected its intent that there shall no longer be reckless, ill-considered, wanton desecration of natural sites significantly related to our country's heritage.

As one step toward implementing the national policy in furtherance of historic preservation, Congress, in the National Historic Preservation Act of 1966 [hereinafter "the NHPA"], 16 U.S.C. §§ 470 et seq. (1970), authorized the Secretary of the Interior

> to expand and maintain a national register of districts, sites, buildings, structures, and objects significant in American history, architecture, archeology, and culture, hereinafter referred to as the National Register . . . .

16 U.S.C. § 470a(a)(1) (1970). The National Register, which includes properties of State and local, as well as national, historic significance, is intended to provide a " . . . convenient guide to properties which should be preserved . . . ." H.R.Rep.No.1916, 89th Cong., 2d Sess., reproduced at 1966 U.S.Code Cong. & Admin.News pp. 3307, 3310. In the NHPA, Congress also created the Advisory Council on Historic Preservation [hereinafter "the Advisory Council"], which is composed of the head officials of certain Federal agencies and other persons, appointed by the President, who have experience and interests in the field of historic preservation. 16 U.S.C. § 470i (1970). The Advisory Council is responsible for coordinating the historic preservation efforts of Federal agencies, state governments, and other organizations, and for making recommendations on matters pertaining to the protection and preservation of historic sites. 16 U.S.C. § 470j (1970).

To facilitate the identification of properties of State and local historic significance that qualify for inclusion in the National Register, the Secretary of the Interior has established certain "National Register Criteria." These Criteria broadly provide, in pertinent part, as follows:

> The quality of significance in American history, architecture, archeology, and culture is present in districts, sites, buildings, structures, and objects of State and local importance that possess integrity of location, design, setting, materials, workmanship, feeling and association and:
>
> (1) That are associated with events that have made a significant contribution to the broad patterns of our history; or
>
> (2) That are associated with the lives of persons significant in our past; or
>
> (3) That embody the distinctive characteristics of a type, period, or method of construction, *or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction;* or
>
> (4) That have yielded, or may be likely to yield, information important in prehistory or history.

36 C.F.R. § 800.10 (1975).

As defined in 36 C.F.R. § 800.3(f) (1975), the phrase "property eligible for inclusion in the National Register" means "any district, site, building, structure, or object which the Secretary of the Interior determines is likely to meet the National Register Criteria." For the purposes of NHPA, the regulations place property that is eligible for inclusion in the National Register on an equal footing with property that is actually listed in the Register. *See* 36 C.F.R. §§ 800.4(a)–(b) (1975).

## II. *The Factual Setting*

As planned, H–3 would constitute the third and final segment of Hawaii's Interstate Highway System. It would be a six-lane, controlled-access highway extending for approximately fifteen miles across the southern half of Oahu, from near Pearl Harbor, on the Island's leeward side, across the Koolau Mountains, to the Kaneohe Marine Corps Air Station, on the windward side. Two conventional highways, the Pali and Likelike Highways, now provide trans-Koolau routes, but according to some offi-

cial projections, these highways will soon be inadequate to serve the growing population on Oahu's windward side. The Moanalua Valley, which is privately owned, lies within Oahu's interior. H–3's projected route extends for approximately three miles along Moanalua's narrow floor. Within Moanalua, H–3 would pass from within 100 to 200 feet of a large petroglyph rock that is known as Pohaku ka Luahine.[6]

In March, 1973, the Moanalua Gardens Foundation, a private, non-profit organization that is interested in Moanalua's preservation, nominated both the Valley and Pohaku ka Luahine for inclusion in the National Register. On July 23, 1973, the Interior Secretary named Pohaku ka Luahine to the National Register. 39 Fed.Reg. 6402, 6422 (1974). In October of 1973, the Interior Secretary's Advisory Board on National Parks, Historic Sites, Buildings and Monuments considered the historic significance of Moanalua Valley. The Board noted that much of the information concerning Moanalua's importance existed only within the private notebooks of oral traditions about the Valley that had been kept by the Valley's former owner, Gertrude Damon, and that since the Damon notebooks had never been released by the Damon estate, they had never been subjected to rigorous scrutiny. Consequently, while the Board believed that Moanalua had not been conclusively

demonstrated to be of national historic significance, it concluded that "[h]istorical, cultural, and natural values combined with outstanding potential for an environmental study area endow Moanalua Valley with an importance that makes its preservation clearly in the public interest." [7]

On May 8, 1974, the Interior Secretary published a Notice in the *Federal Register* that Moanalua, along with a number of other properties,

> may be eligible for inclusion in the National Register of Historic Places and are therefore entitled to protection under section 1(3) and section 2(b) of Executive Order 11593 and other applicable Federal legislation.

39 Fed.Reg. 16175–76 (1974).[8] Explaining his decision, then Interior Secretary Morton wrote in a letter to the Governor of Hawaii that while Moanalua was not of national historic significance, the Valley "possessed historical and cultural values of at least local dimensions and, therefore, could meet the less stringent criteria of the National Register for sites of local significance." [9]

Thereafter, however, on August 5, 1974, the Hawaii Historic Places Review Board, a State body responsible for evaluating and nominating Hawaiian properties for inclusion in the National Register and for maintaining the Hawaii Register of Historic

---

**6.** The Advisory Council states that

Pohaku ka Luahine, a large boulder marked with petroglyphs, is located in the center of Moanalua Valley . . . . Pohaku ka Luahine is the largest free-standing petroglyph boulder on the island of Oahu and measures some 11′ × 8′ × 6′. There are only ten known petroglyph sites on the island of Oahu and only three such free-standing petroglyph boulders in the entire State.

The rock shows 22 carvings which have been identified as petroglyphs (rock carvings) of human figures and bird men which range in sizes up to approximately 20 inches. All these were carved or pecked into the boulder surface with crude stone tools and endless hours of labor. The rock carving is described by the State Historic Preservation Officer as a "superb artistic expression of form in a medium of hard rock, using the crudest of tools and an unknown duration of labor . . . reason enough for ensuring the preservation of Pohaku ka Luahine." [T]he

ancient Hawaiians believed that natural phenomena—both animate and inanimate—possess spiritual form and being. In tradition, the rock is sacred.

Advisory Council, *Comments, supra* note 1.

**7.** United States Department of the Interior, Memorandum from the Chairman, Advisory Bd. on Nat'l Parks, Historic Sites, Bldgs. & Monuments, to the Secretary of the Interior, October 3, 1973.

**8.** Section 1(3) of Exec.Order No. 11,593, 36 Fed.Reg. 8921 (1971), 16 U.S.C. § 470 (Supp. I, 1971), requires Federal agencies to establish procedures for the protection and enhancement of non-federally owned historic sites. Section 2(b) of the Order pertains only to historic sites located on federally-owned land.

**9.** Letter from Rogers C. B. Morton, Secretary of the Interior, to Governor Burns of Hawaii, May 13, 1974.

Places, [10] met concerning Moanalua and determined that the Valley was only of "marginal" local significance,[11] a classification that affords the Valley no protection from destruction.

Since Pohaku ka Luahine had already been named to the National Register, the Federal Highway Administrator, in compliance with 36 C.F.R. § 800.4 (1975), requested the Advisory Council on Historic Preservation to comment concerning H-3's potential impact on the petroglyph rock. The Advisory Council met on August 6th and 7th, 1974. Because the Interior Secretary had recently determined that Moanalua was eligible for inclusion in the National Register, the Council broadened its review of H-3 from that requested by the Federal Highway Administrator to include the highway's potential impact on the Valley. The Advisory Council's report, copies of which were furnished to the Secretary of Transportation and to the Secretary of the Interior, concluded that both Pohaku ka Luahine and the Moanalua Valley possessed "historical, cultural, and archeological significance warranting their preservation."

Notwithstanding the Advisory Council's report and the Interior Secretary's published determination that Moanalua "may be eligible" for inclusion in the National Register, the Secretary of Transportation concluded, in September of 1974, that ". . . the Valley does not come under the provisions of Section 4(f)." [12]

### III. *Discussion*

■ The District Court did not dispute the significance attached by the regulations to property that is eligible for inclusion in the National Register. The court wrote:

[D]etermination by the secretary of interior that a property is eligible for inclusion in the National Register triggers all protections given to a property actually included until the eligibility is resolved. 389 F.Supp. at 1117. The court believed, however, that the Interior Secretary's May 8, 1974, *Federal Register* Notice, which stated that Moanalua "may be eligible" for inclusion in the Register, was not equivalent to a determination that the Valley "is eligible." We cannot accept this purported distinction.

As noted above, the regulations define "eligible for inclusion" in the National Register as meaning "likely to meet the National Register Criteria." We are absolutely unable to perceive any meaningful distinction between "may be eligible" and "is likely to meet the criteria" for inclusion in the National Register. Furthermore, in his *Federal Register* Notice, the Interior Secretary specifically stated that the "may be eligible" designation entitled the listed properties to protection under the relevant Executive Order and "other applicable Federal legislation." This is the same protection that is provided under an "is eligible" determination. Finally, subsequent to the District Court's decision in this case, the Interior Secretary has resolved any remaining doubts by publishing a new *Federal Register* Notice concerning Moanalua. This Notice specifically states that the Valley has been determined "to be eligible for inclusion in the National Register." 40 Fed. Reg. 23906-07 (1975).

The District Court also concluded, and the appellees here contend, that since the Interior Secretary specifically determined Moanalua not to be of *national* historic significance, the question whether the Valley

---

10. Hawaii Rev.Stat. §§ 6-16.1, 6-16.2(11)(g) (1974 Supp.).

11. The State's review board acted on the basis of a motion from one of its members that, in view of "deficiencies and apparent inaccuracies in historical information" and "inconsistencies in legendary material that has been presented," the Moanalua Valley "be given a marginal status." The same member stated that his motion would not preclude the later submission of ad-

ditional information that might qualify the Valley for a higher classification. Minutes of the Meeting of the Hawaii Historic Places Review Board, August 5, 1974.

12. United States Dept. of Transportation, Federal Highway Administration, Memorandum from the Associate Administrator for Right-of-Way and Environment to the Regional Federal Highway Administrator, San Francisco, September 19, 1974.

is significant in State or local history should be resolved solely by the Hawaii Historic Places Review Board. As previously noted, that Board has classified the Valley as being of only "marginal" historic significance. In our view, the District Court and the appellees have misconstrued section 4(f).

Section 4(f) applies to all properties that "the Federal, State, or local officials having jurisdiction thereof" determine to be of "national, State, or local significance." Under the NHPA, the Interior Secretary's "jurisdiction" to determine historic significance is not limited to properties of national importance.[13] In defining the National Register, the NHPA speaks in terms of properties "significant in American history, architecture, archeology, and culture," 16 U.S.C. § 470a(a)(1) (1970). To us, it appears beyond dispute that such significance can be found in properties that relate only to the history of a particular region, state, or locality. See 36 C.F.R. § 800.10 (1975); H.R.No.1916, 89th Cong., 2d Sess. (1966) reproduced at 1966 U.S.Code Cong. & Admin.News, p. 3307. Since the Interior Secretary is the only official authorized to name properties to the National Register, we have no doubt that he has "jurisdiction" to determine whether properties have state or local historic significance.

Under section 4(f)'s disjunctive language, if any of the officials having jurisdiction to determine that a site has national, State, or local historic significance, so decides then section 4(f) applies. Consequently, the Interior Secretary's determination that Moanalua is eligible for inclusion on the National Register as a site of local historic importance is not vitiated, and cannot be vitiated, by the State Review Board's finding that the Valley has only "marginal" significance. See Named Individual Members v. Texas Highway Dept.,

---

**13.** "Jurisdiction means the right to say and the power to act; and, as between agencies of the government, jurisdiction is the power of that particular agency to administer and enforce the law." *Carroll Vocational Institute v. United States,* 211 F.2d 539, 540 (5th Cir.), *cert. denied,* 348 U.S. 833, 75 S.Ct. 56, 99 L.Ed. 657 (1954).

The NHPA authorizes the Secretary "to expand and maintain" the National Register, and the *only* requirement for a property's inclusion in the Register is that the property be "significant in *American* history, architecture, archeology, [or] culture." 16 U.S.C. Sec. 470a(a)(1) (emphasis added). The Act does not distinguish in any way between properties of "national" significance and those of "state or local" significance. There is nothing whatsoever in the Act or its legislative history to indicate that the Secretary may name some properties to the Register—those of importance in the history of a region, state, or locality—only after obtaining the concurrence of state and local authorities. For the purposes of the Register, properties of national, state, and local significance are treated equally. They all are deemed significant in *American* history, and they should be. If it should be held that the Interior Secretary has no power to determine that properties have state or local historic significance, there would, in our view, be a virtual nullification of the NHPA and Section 4(f). Only properties of "national" significance would have any lasting protection from destruction. Whenever a city or state preferred a Federally-funded highway to an historic site, the local body could simply declare the site insignificant. Such a holding would be without precedent and would completely defeat Congress's clear attempt to protect such properties by passing the NHPA and 4(f).

The Advisory Council's regulations, upon which the appellees have relied, undoubtedly support our interpretation of the Secretary's power under the NHPA. Those regulations require *Federal agency officials* to request opinions from the Interior Secretary concerning a property's eligibility for inclusion in the Register. The Secretary's opinion is then said to be conclusive. 36 C.F.R. Sec. 800.4 (1975). The regulations do not require the concurrence of a state or local preservation official before the Secretary may conclude that a property is eligible for the Register.

Further, in our view, there has been nothing irregular or precipitous about the Interior Secretary's decision concerning the Valley with which we are concerned. The Secretary acted on the basis of an application submitted by the Moanalua Gardens Foundation, on forms provided by the Secretary for the purpose of making such nominations, and upon the expert recommendations of the Advisory Board on National Parks, Historic Sites, Buildings and Monuments and the Advisory Council on Historic Preservation. Indeed, the Secretary's decision concerning the Valley followed essentially the same channels as did his determination concerning Pohaku ka Luahine, and not even the appellees have questioned the validity of the latter decision.

446 F.2d 1013, 1025–27 (5th Cir. 1971), *cert. denied*, 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972) (section 4(f) applicable even though city officials had determined that city-owned parkland was of "secondary" importance to the construction of a freeway).[14]

■ In our court, the appellees have advanced three additional arguments which, if correct, might serve to validate the Transportation Secretary's decision that section 4(f) does not apply to the Moanalua Valley. First, taking a position different from that adopted by the District Court, the appellees assert that, even though the Secretary of the Interior may have determined Moanalua to be eligible for inclusion in the National Register, that determination does not constitute a finding of Moanalua's "historic significance" for the purposes of section 4(f). Appellees argue that section 4(f)'s application is narrowly restricted to properties that are actually included in the National Register or perhaps a similar state or local compilation of historic sites. We disagree.[15] In our view, the Interior Secre-

14. *See also* Gray, *Section 4(f) of the Department of Transportation Act*, 32 Md.L.Rev. 327, 386 (1973).

Appellees contend that *Named Individual Members* is distinguishable from the instant appeal because there the city council did not find the park to be of *no* significance but only stated that the park was of "secondary" importance to the highway. We note that, somewhat similarly, the Hawaii Historic Places Review Board did not specifically find Moanalua to be of *no* historic significance. The Board classified the Valley as having "marginal" significance. *See* note 11 *supra*. As do the appellees here, the Highway Department in *Named Individual Members* argued that the local body's action constituted a finding of no significance. *Named Individual Members*, 446 F.2d at 1026.

*Pennsylvania Environmental Council, Inc. v. Bartlett*, 454 F.2d 613, 620–23 (3d Cir. 1971), presented a different issue. There, the question was whether certain forest lands, owned by the State of Pennsylvania, had ever been set aside by the State as parkland or for other public recreational uses. The court held that the Secretary of Transportation was entitled to rely on an opinion letter from the State's Attorney General which stated that the lands had not been set aside for such purposes.

15. Section 4(f) focuses on Federal, not state or local, activities. It forbids the Secretary of Transportation from approving the use of Federal funds for highway projects not meeting the section's requirements. The statute has no application to purely state or local construction efforts. Section 4(f) begins by requiring, as a matter of national policy, that special effort be made to preserve historic sites. In view of the section's focus and obvious purpose, we simply cannot believe that either the Transportation Secretary or our court can ignore or avoid the Interior Secretary's pronouncement concerning the Valley.

We have concluded that under section 4(f) the Interior Secretary undoubtedly had the power, or jurisdiction, to investigate Moanalua, and while he decided that the Valley was not significant in the evolution of our history as a Nation, he nevertheless concluded that the Valley was likely of importance in our history as a people (i. e., significant in *American* history) and consequently declared the property eligible for the Register. His finding, when fitted into the mold of section 4(f), constitutes a finding of state or local significance. Congress's use of the plural "officials" in section 4(f) supports *our interpretation of the statute's meaning.* If the statute had read "as so determined by the Federal, State, or local *official* having jurisdiction thereof," it could then be interpreted as meaning that only the appropriate state official could determine that a site has state significance, etc. *That is not what the statute says.*

The legislative history of section 4(f) indicates that Congress inserted the language in question into the statute in order to broaden the statute's applicability. There is no hint in either the committee reports or the floor debates that Congress was seeking, by using the language, to give state and local officials power to vitiate Federal determinations that parklands or historic sites are significant. One of Congress's objectives was to require the Transportation Secretary to apply the statute whenever state or local officials declare a property significant, regardless of what Federal officials might think of the site. Congress's other goal was to guard against the situation wherein state or local officials decide that they would rather have a highway than a park or historic site and consequently declare the property to be insignificant. It is inconceivable that Congress intended that a local agency, by action or inaction, could disempower the Federal government, in a situation involving Federal funds, from preserving a site of historical *American* significance.

In the Senate's floor debate on the conference report pertaining to 4(f), Senator Yarborough asked Senator Randolph, who chaired the conference committee, the very question that concerns us:

[Senator Yarborough]. The question has been raised that, if the local authorities said that a site had no historic significance, engineers could ram a highway through regard-

tary's determination that Moanalua "is likely to meet" the established National Register Criteria constitutes a finding that the Valley has historic significance. A contrary conclusion would exalt form and ignore substance.

■ In making this argument, appellees rely on two paragraphs of a letter written by former Interior Secretary Morton concerning his determination that Moanalua is eligible for inclusion in the National Register. Secretary Morton wrote that his determination of Moanalua's eligibility for listing in the Register did not trigger the requirements of section 2(b) of Executive Order 11593 and that the Department of Trans-

portation remained ". . . solely responsible for determining which provisions, if any, of the . . . Department of Transportation Act . . . are applicable" to H–3.[16] We do not interpret Secretary Morton's letter as broadly as do the appellees. Section 2(b) of Executive Order 11593 establishes special requirements for the protection of historic sites that are located on lands owned by the United States. Since Moanalua is privately owned, the section, under its own terms, does not apply. Furthermore, there is no question that, as Secretary Morton stated, the Secretary of Transportation, not the Secretary of the Interior, is responsible for making the initial determination whether section 4(f) applies to a particular highway project.[17] In

less of a site's being of historic significance. Is that correct?

MR. RANDOLPH. No; they could not ram it through, as the Senator has said.

MR. YARBOROUGH. Do the Secretary of Transportation and the highways officials of the Federal Government have the power to apply this provision of the bill as written even though the local officials say such a site has no significance?

MR. RANDOLPH. Under their power to approve plans, specifications, and estimates they can review such decisions.

\* \* \* \* \* \*

MR. YARBOROUGH. \* \* \* If you run a highway through a long, slender park . . you do not have to pay any tax money for right-of-way. Thus the city council, hard pressed for money, is seeking to run a highway right through the center of one of the best parks in the State.

MR. RANDOLPH. We are not going to allow that. [Indicating that the *Federal* power is transcendent.]

114 Cong.Rec. 24036–37 (1968).

The only commentator to consider the question also agrees with our interpretation of section 4(f):

Historic sites present special problems. Unlike the other protected lands they need not be publicly owned. When they are not publicly owned, no presumption of a determination of significance can arise from the fact of public maintenance since normally only publicly owned property is publicly maintained. It is, on the other hand, customary for historic sites to be designated as such by someone such as a local or state landmarks commission, or by the United States Department of the Interior. Any such designation is presumably equivalent to a determination of significance for purposes of section 4(f).

The determination may be made by any of the local, state or federal officials who can

claim to have "jurisdiction thereof." For these purposes "jurisdiction" may refer to more than merely political authority, although governing bodies having general jurisdiction over the land in question would be able to trigger the application of the last sentence of Section 4(f) by declaring their determination of the significance of land which they wish to protect. An agency which is authorized to decide that properties have historic importance may be regarded as having "jurisdiction" over determinations of historic significance. Some properties, for instance, are listed by the Secretary of the Interior in the National Register of Historic Places.[129] *It is inconceivable that a National Register property could be regarded as ineligible for protection under section 4(f), regardless of whether it was considered "significant" by the local or state governing bodies having political jurisdiction over the property.* A similar triggering function may inhere in a local or state historic society, if it has official status to designate landmarks. It might also be found in a state parks or recreation commissioner with respect to local parks which he has the authority to classify for state purposes, although they may not be under his administrative control. (Emphasis added)

Gray, *Section 4(f) of the Department of Transportation Act*, 32 Md.L.Rev. 327, 386 (1973).

16. Letter, *supra* note 9.

17. Our interpretation of Secretary Morton's letter is supported by a subsequent letter from Nathaniel P. Reed, Assistant Secretary of the Interior, to Acting Governor Ariyoshi of Hawaii. Secretary Reed's letter states, in pertinent part:

As was explained in Secretary Morton's May 13 letter to Governor Burns, . . . our

making that determination, however, the Transportation Secretary must ascertain whether the project will use land from a site of historic significance, as determined by the Interior Secretary, or state or local historic preservation officials. Moreover, as here, the Transportation Secretary's decision is subject to judicial review.

Appellees next assert that the Interior Secretary's determination that Moanalua is eligible for inclusion in the National Register is invalid because the determination was not made in accordance with the procedures set forth in 36 C.F.R. § 800.4(a)(2) (1975). In pertinent part, that regulation reads:

> If [the Federal] Agency Official [responsible for a specific project] determines that a property [that will be adversely affected by the project] appears to meet the [National Register] Criteria, or if it is questionable whether the Criteria are met, the Agency Official shall request, in writing, an opinion from the Secretary of the Interior respecting the property's eligibility for inclusion in the National Register. The Secretary of the Interior's opinion . . . shall be conclusive for the purposes of these procedures.

Appellees contend that, since the Secretary of Transportation, who was the agency official responsible for H–3, did not request the Interior Secretary to determine whether Moanalua was eligible for inclusion in the National Register, the Interior Secretary had no authority to make such a determination.

Initially, we note that in making this argument appellees expose their own hands, some of which are not wholly clean. The regulation expressly and unambiguously provides that "if it is questionable" whether a property meets the National Register Criteria, the responsible agency official *shall* request the Interior Secretary's opinion. It is manifest that throughout 1974 it was at least "questionable" whether Moanalua was eligible for the National Register. The Valley had been nominated for the Register as early as March, 1973, and in 1974, the Valley was the subject of studies by the Advisory Council and the State's historic review board. On May 8, 1974, the Interior Secretary published an official notice that the Valley "may be eligible" for the National Register. The Transportation Secretary here seeks to avoid the effects of his own, wholly inexcusable, noncompliance with the regulation.

■ Furthermore, we find nothing in NHPA or the implementing regulations that would preclude the Interior Secretary from determining, on his own initiative, whether a property is eligible for inclusion in the National Register. Such could prove to be one of his most important and enduring contributions. The procedures set forth in 36 C.F.R. § 800.4 (1975) apply only to the special situation wherein a property not previously evaluated in the light of the National Register Criteria, is in imminent danger of alteration or destruction because of an on-going or proposed Federal project. Here, before the Interior Secretary acted, Moanalua had been nominated for inclusion in the Register by the Moanalua Gardens Foundation and had been studied by the Secretary's Advisory Board on National Parks, Historic Sites, Buildings, and Monuments. We believe that the Interior Secretary's determination was well within his power under the Congressional authorization conferred by the NHPA.

■ Finally, appellees have suggested that the Transportation Secretary's review and approval of the Environmental Impact Statement (EIS) pertaining to H–3, which includes some material concerning Moanalua's historic significance, as well as discussions of several alternatives to H–3's pro-

---

evaluation of the eligibility of Moanalua Valley for inclusion in the National Register was not made pursuant to Section 2(b) of Executive Order 11593, since the property is not in public ownership.

\* \* \* \* \* \*

I would like to reiterate . . . that once we assist an agency in making an evaluation on a property, it is the agency's responsibility to assess its own legal obligations under Federal law. The Secretary of the Interior is not at liberty to exempt the Department of Transportation from that obligation.

posed route through the Moanalua Valley,[18] constitutes compliance with section 4(f). Section 4(f) does not require the Transportation Secretary to set forth specific findings and reasons for approving a project that will use land from parks or historic sites.[19] *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 417–19, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 154 (1971). Nevertheless, a court reviewing the Secretary's 4(f) decision must satisfy itself that the Secretary evaluated the highway project with the mandates of section 4(f) clearly in mind. *Id.* at 416, 91 S.Ct. at 823, 28 L.Ed.2d at 154. On the administrative record, the Secretary's consistent position was not that he had complied with section 4(f) but that the statute was altogether inapplicable. In the light of that consistently recorded position, it is not possible, with factual accuracy, to conclude that the Secretary evaluated H–3 with the explicit directives of 4(f) firmly in mind. Furthermore, we note that the EIS provides no evidence that the Secretary complied with section 4(f). While the document does contain some discussion of the advantages and disadvantages of several alternatives to H–3, as the roadway is now planned, the analyses do not attempt to demonstrate, or purport to establish, that each of the alternatives is not "feasible or prudent," as those terms are defined within the context of section 4(f). *Id.* at 411–13, 91 S.Ct. at 821, 36 L.Ed.2d at 150.

We conclude that the Secretary of the Interior has determined Moanalua to be eligible for inclusion in the National Register of Historic Places and that this determination entitles the Valley to the protections Congress has established for historic sites in section 4(f). We further conclude that the Secretary of Transportation did not comply with the requirements of section 4(f) before he approved Federal funding for H–3.

## IV. *Other Issues*

Appellants contend that the Secretary also failed to comply with section 4(f) with respect to Pohaku ka Luahine, which, as we have heretofore noted, is included in the National Register. Because the petroglyph rock has once been moved and now rests a short distance from its original location, the District Court concluded that the rock, and its present surroundings, do not constitute an "historic site" for the purposes of section 4(f). 389 F.Supp. at 1116.

After careful consideration, we cannot escape the conclusion that Pohaku ka Luahine, and its immediate environs, qualify for protection under section 4(f). It is clear that the rock was originally located in the Valley, and it is inseparably linked to historic events that there occurred long since. Consequently, so long as the rock remains in the Valley, even though it may stand a few feet from its original location, we believe that it forms the basis for an historic site. Further, we believe that H–3, which will pass near the rock, will "use" land from that historic site. *See Brooks v. Volpe,* 460 F.2d 1193, 1194 (9th Cir. 1972) (a proposed highway that would encircle a public campground would "use" that campground).

In the particular circumstances of this case, however, Pohaku ka Luahine's fate, like its historic significance, is linked to that of the Moanalua Valley. If the Secretary validly determines that there is no "feasible and prudent" alternative to the alleged desecration of the Valley, there will be no such alternative to the use of the petroglyph rock. Consequently, if the Secretary makes

---

**18.** The alternatives discussed range from not building H–3 but instead improving, in various ways, the existing Pali and Likelike Highways, to placing H–3 along different routes across Oahu. Appellants contend that the City of Honolulu, containing a major portion of Oahu's population and undeniably having a vital interest in the trans-Koolua traffic flow, supports an alternative to the construction of H–3 which would add to the Likelike Highway a single, reversible-flow lane, to be used exclusively for public bus transportation.

**19.** The Secretary's own procedures do, however, contemplate the preparation of combined "environmental impact/Section 4(f)" statements. *See* Dept. of Transportation, Federal Highway Administration, Policy and Procedure Memorandum 90–1, reproduced at 23 C.F.R. 15–26 (1974).

such a determination, the 4(f) inquiry with respect to the rock must be whether there has been "all possible planning to minimize harm."

Appellants have presented three other issues to us. They contend that the EIS for H–3 and the 4(f) statement pertaining to the Pali Golf Course are inadequate and that the H–3 project is not grounded in a continuing comprehensive State and local transportation planning process, as is required by 23 U.S.C. § 134(a) (1970). Because of our decision as to Moanalua Valley and Pohaku ka Luahine, we believe that we should not consider these issues at this time. It is altogether possible that future developments will moot these issues. In the event that the Secretary does conclude that there is no "feasible and prudent" alternative to the routing of a multi-lane highway through Moanalua, the District Court will reconsider that conclusion and these other issues in the light of all information that will then be available.

The District Court's Order dissolving the injunctions against construction of H–3 is reversed. On remand, the District Court will enjoin construction of the highway until such time that the Secretary can demonstrate his full compliance with section 4(f) as the statute applies to Moanalua Valley and Pohaku ka Luahine and has made a determination in harmony with the statutory requirements.

REVERSED AND REMANDED.

WALLACE, Circuit Judge (concurring and dissenting):

I concur that this case must be remanded but cannot agree with the route the majority takes to that end, nor with what it requires. The most troublesome issue for me in this case pertains to the petroglyph rock but since the majority reverses largely on the basis of the protection supposedly accorded the Moanalua Valley, I will treat those issues first.

## I. *Moanalua Valley*

While all who legitimately attempt to preserve the beauty and historical significance of our environment are to be applauded, our responsibility as judges, as I see it, is to determine whether the congressionally mandated procedures for protection require halting an approved construction project. Our review, thus, is a narrow one, not broadened by policy considerations we might inject if we were the Congress. Therefore, the sole issue in this case with respect to the valley is whether it is an historic site of national, state or local significance as determined by the federal, state or local officials having jurisdiction thereof. If so, construction of H–3 must be enjoined pending the special findings required of the Secretary of Transportation by the Department of Transportation Act of 1966 section 4(f), as amended, 49 U.S.C. § 1653(f), and the Federal-Aid Highway Act of 1966 section 15(a), as amended, 23 U.S.C. § 138 (the two sections are virtually identical and will hereafter be referred to together as "section 4(f)"). If not, the district court's denial of an injunction on this ground must be affirmed.

The facts are not seriously in dispute: the Secretary of the Interior has determined that the valley "may be eligible" for inclusion on the National Register of Historic Places; the Hawaii Historic Places Review Board determined that the valley had only "marginal" significance, an equivalent term for "no" significance, and was therefore not entitled to any protection under state historic site preservation laws. *See* Hawaii Rev.Stat. § 6–1 *et seq.* (1968, Supp.1973).

The plaintiffs-appellants (appellants) assert a novel theory, rejected by the district court, which involves the use of a different statute out of context to find the bootstrap necessary to inject the Secretary of the Interior as the decision maker pursuant to section 4(f). The problem they must overcome is that the valley has no national historic significance. The local authorities did not find that it had local historic significance. Thus, they must show (1) the Secretary of the Interior found the valley had local historic significance and (2) he is an official allowed to make such a finding pur-

suant to section 4(f). Therefore, they pose the argument that the Secretary of the Interior has authority under the National Historic Preservation Act, 16 U.S.C. §§ 470 *et seq.* (NHPA), to determine the state and local historic significance of places in passing on nominations to the National Register and is therefore one of the officials having jurisdiction over the valley whose determination of historic significance triggers section 4(f) protections. This is the argument relied upon by the majority in reversing the decision of the district court and with which I cannot agree.

Turning to the statute appellants claim injects the Secretary of the Interior into section 4(f) decisions, I conclude that the Secretary had no authority based upon the facts of this case to place the valley on the National Register. Thus, even if appellants' theory were accepted that the NHPA in some fashion allows the Secretary of the Interior to decide a site has local historic significance, it would avail them nothing based upon the record in this case. Section 101(a)(1) of the NHPA, 16 U.S.C. § 470a(a)(1), provides that the Secretary of the Interior is "to expand and maintain" the National Register. The Act does not expressly specify the procedure for determining which properties are to be listed on the National Register but a reasonable interpretation of all the available sources indicates that properties of state and local historic significance are not to be listed by the Secretary of the Interior unilaterally without an initial determination of significance by state officials.

Supporting this view, section 101(a)(1) of the NHPA provides that the Secretary of the Interior shall grant funds to the states for statewide historic surveys to be conducted *by the states.* Executive Order 11593 promulgated to implement the NHPA provides that the Secretary of the Interior's role under the Act is merely to encourage state and local officials to nominate federally-owned properties to the National Register, Executive Order 11593 § 3(a), 3 C.F.R. 154 (Supp.1971), 16 U.S.C. § 470, and to advise federal agencies in the identification of historic sites. *Id.* § 3(f).

Of most significance is the notice published in the Federal Register by the Department of the Interior for the purpose of increasing "awareness of the means by which properties of State and local historical significance may be nominated for placement in the National Register . . . ." 39 Fed.Reg. 6402 (1974). It is critical to realize that this notice states that while under prior law (specifically, the Historic Sites Act of 1935, 16 U.S.C. §§ 461 *et seq.*) the National Register included only nationally significant properties which were few in number, the NHPA "provides a means for *States* to nominate properties of *State and local significance* for placement in the National Register." 39 Fed.Reg. 6402 (1974) (emphasis added). The notice then sets forth the procedures for nominations by state officials and the criteria to be used by the National Park Service in reviewing the nominations. 39 Fed.Reg. 6403–04 (1974). Nowhere in the NHPA, the Executive Order, or the applicable regulations is the Secretary of the Interior given the authority unilaterally to determine that a property has state or local historic significance.

The appellants place great emphasis on regulations promulgated by the Advisory Council on Historic Preservation, an advisory body created by the NHPA, 16 U.S.C. § 470i. These regulations arguably confer some authority on the Secretary of the Interior to determine the state and local historic significance of properties but the regulations also restrict his part in the decision-making process and give no assistance to appellants' contention that the Secretary of the Interior possesses unilateral decision-making authority. The regulations provide that even though the NHPA protects only properties actually listed on the National Register, properties merely "eligible" for listing should also be protected. To this end, the "Agency Official" of the federal agency contemplating an undertaking (here, the Secretary of Transportation) is given the burden of identifying the proper-

ties within the undertaking's potential environmental impact which are listed or eligible for listing on the National Register. Only if, after consulting with the appropriate state historic preservation officer and applying the National Register criteria set forth in the regulations, the agency official determines that a property "appears to meet the Criteria, or if it is questionable whether the Criteria are met," is he required to "request, in writing, an opinion from the Secretary of the Interior respecting the property's eligibility for inclusion in the National Register." 36 C.F.R. § 800.-4(a)(2) (Supp.1975).

The Governor of Hawaii has designated the chairman of the state Department of Land and Natural Resources as the state liaison officer responsible for state activities under the NHPA. *See* 39 Fed.Reg. 6402 (1974). The Federal Highway Department Division Engineer consulted this official concerning the eligibility of the valley for listing on the National Register as a property of state or local significance and was informed by letter of March 6, 1974, that the valley clearly did not meet the National Register criteria.

Appellants nevertheless argue that in this case the valley's eligibility for National Register listing was at least "questionable," especially in light of the Secretary of the Interior's published determination that the valley "may be eligible" for listing. They claim that in these circumstances, the regulations clearly give the Secretary of the Interior "jurisdiction" within the meaning of section 4(f) to determine the valley's local (not national) historic significance. But the regulations clearly put the initial burden of determining the eligibility of a site for National Register listing on the agency supervising the undertaking, here the Department of Transportation, and give the Secretary of the Interior no authority to make any determination until he has been asked for an opinion. Here the Secretary of Transportation consulted the appropriate state official who advised that the valley clearly was not eligible for listing. The Transportation Secretary never requested a ruling from the Secretary of the Interior and the Secretary of the Interior therefore had no authority under the regulations to make any determination with respect to the significance of the valley. It can be properly inferred that the Secretary of the Interior realized this was true when, in his letter to the Governor of the State of Hawaii, he deferred to the Secretary of Transportation's exclusive authority to make any such determination.[1]

The majority does not confront this point directly but instead asserts that the failure of the Secretary of Transportation to seek the Secretary of the Interior's opinion was "wholly inexcusable." They argue that the valley's significance was at least "questionable" in light of its "nomination" to the National Register by the private Moanalua

---

1. The letter stated in part:

   In response to a recent request from the Council, we provided such an evaluation of Moanalua Valley. It reflected the consensus of the Advisory Board and the professional judgment of the National Park Service that, although not of national significance, Moanalua Valley possessed historical and cultural values of at least local dimensions and, therefore, could meet the less stringent criteria of the National Register for sites of local significance.

   In making this assessment, we have discharged a responsibility vested in the Secretary of the Interior by the National Historic Preservation Act and section 3(f) of Executive Order 11593. I want to make clear that this assessment does not constitute a determination of prospective eligibility for National Register designation pursuant to section 2(b) of the Executive Order, and does not, therefore, have the effect of requiring consultation on this matter between the Secretary of Transportation and the Advisory Council on Historic Preservation.

   The Department of Transportation is, of course, solely responsible for determining which provisions, if any, of the Executive Order, the National Historic Preservation Act, the Department of Transportation Act, and the National Environmental Policy Act are applicable to this undertaking. I understand that pending litigation on at least some of these issues must be favorably resolved before work on the highway can proceed. I hope this letter has clarified the responsibilities and actions of the Interior Department in relation to those of the Advisory Council and the Department of Transportation.

Gardens Foundation [2] and the studies of the valley by the state's Historic Places Review Board and the national Advisory Council. Yet the local historic significance of the valley was not determined by the Advisory Council or the Secretary of the Interior until 1974, after the determination by the chairman of the state Department of Land and Natural Resources that the valley was clearly not eligible for National Register listing, after design approval of H–3 by the FHWA, and after the original complaint in this action was filed. Moreover, appellants have never alleged an abuse of discretion by the Secretary of Transportation in not seeking the Secretary of the Interior's opinion. In these circumstances, especially in light of the determination of no historic significance by the state official whom the Secretary of Transportation is required to consult by the very regulation relied upon by appellants, the propriety of the failure of the Secretary of Transportation to seek the Interior Secretary's opinion should not be in issue.

However, even if appellants were correct, which they were not, and the Secretary of the Interior could be said to have "jurisdiction" of the valley pursuant to this regulation, the regulation itself does not apply to this case. The regulations were issued under the authority of Executive Order 11593 § 1(3), 3 C.F.R. 154 (Supp.1971), 16 U.S.C. § 470, which requires federal agencies to establish procedures to insure that federal activities contribute to the preservation and enhancement of non-federally owned historic sites. Thus, the Advisory Council in promulgating the regulations merely "*recommends* that Federal Agencies use these procedures as a guide in the development . . : of their [own] required internal procedures." 36 C.F.R. § 800.1(b)(2) (Supp.1975) (emphasis added).

In this regard, the Department of Transportation had adopted its own internal procedures for historic preservation more than a year earlier. Policy and Procedure Memorandum 90–1, 37 Fed.Reg. 21809, 21812 (1972), 23 C.F.R. Pt. 1, App. A (Supp.1974). These procedures afforded NHPA protections only to properties actually listed on the National Register and not to those merely "eligible" for listing. The procedures gave the Secretary of the Interior no role in the identification of historic properties. The same memorandum also prescribed procedures for compliance with section 4(f). Specifically, "[t]he HA [in this case, the state highway department] shall request a determination of significance from the section 4(f) lands agency . . ." *Id.* ¶ 6(c)(1). The memorandum does not elaborate on the identity of the "section 4(f)

2. The majority states at page 438, *ante,* that both the petroglyph rock and the valley were nominated by the Moanalua Gardens Foundation for National Register listing. The majority then argues in footnote 13, *ante,* that there was nothing irregular in the nomination of the valley and that the procedure was "essentially" the same as that leading to the National Register listing of the petroglyph rock, the validity of which the appellees do not challenge.

While it is true that the valley was nominated by the Moanalua Gardens Foundation, the petroglyph rock was in fact nominated by Hawaii's state Department of Land and Natural Resources. This not only undercuts the argument of the majority but is significant evidence supporting the position taken in this concurring and dissenting opinion.

Further, the National Park Service form 10–300 (July 1969), upon which both nominations were made, includes an item 12, "State Liaison Officer Certification," which reads in part: "As the designated State Liaison Officer for the National Historic Preservation Act of 1966 (Public Law 89–665), I hereby nominate this property for inclusion in the National Register and certify that it has been evaluated according to the criteria and procedures set forth by the National Park Service." The inclusion of this item on the form is consistent with my reading of the NHPA as limiting the Interior Secretary's statutory duty "to expand and maintain" the National Register to evaluation of nominations made in the first instance by designated state officials. Significantly, this item is at least partially filled in on the form nominating the petroglyph rock, including a designation of the title of the certifying officer as "Chairman and Member Board of Land and Natural Resources"; it is left completely blank on the form "nominating" the valley. That the Interior Secretary appreciated the significance of this difference no doubt explains why he placed the rock on the National Register, 39 Fed.Reg. 6422 (1974), but determined only that the valley "may be eligible" for such listing. *Id.* at 16175–76.

lands agency" but use of the singular "agency" negates appellants' argument for concurrent "jurisdiction" of the Secretary of the Interior over historic sites of local significance.

On December 2, 1974, the Department of Transportation promulgated new regulations which implicitly afford NHPA protections to properties merely eligible for listing on the National Register by requiring that the section 4(f) statement (if any) include evidence that the Advisory Council's recommended procedures have been followed for such properties. 23 C.F.R. § 771.19(b) (Supp.1975). Significantly, however, the new regulations also provide that "[a] section 4(f) statement is not required when the Federal, State or local official having jurisdiction over a park, recreation area, refuge or historic site determines that it is not significant" (*id.* § 771.19(c)), apparently even if the property has been determined to be "eligible" for National Register listing by the Secretary of the Interior. To sum up, the Secretary of the Interior has no authority to make a unilateral determination of the local significance of an historic site for section 4(f) purposes.

The majority's final argument is that even if the Secretary of the Interior is not expressly given the authority unilaterally to determine a site's local historic significance by any of the statutes, orders, or regulations cited by the appellants, none of those provisions preclude such power. I find no authority for nor could I endorse a doctrine that the Secretary of the Interior has all powers under the NHPA not expressly withheld from him. In my judgment, such a philosophy has extreme potential dangers. But even if I were to concede that the Secretary of the Interior has such authority, I do not think that he would be an official with jurisdiction to determine local historic significance of the valley within the meaning of section 4(f).

Turning then to section 4(f) itself, it was originally enacted in 1966 as part of the Department of Transportation Act. The section provided in part: "[T]he Secretary [of Transportation] shall not approve any program or project which requires the use of any land from a public park, recreation area, wildlife and waterfowl refuge, or historic site unless . . . ." Act of October 15, 1966, Pub.L. No. 89–670, § 4(f), 80 Stat. 934. This section and section 15(a) of the Federal-Aid Highway Act of 1966, which had been similar, were amended in 1968 so as to be virtually identical. Act of August 23, 1968, Pub.L. No. 90–495, § 18, 82 Stat. 823. The new statute provides, with the major 1968 additions emphasized:

(f) *It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites.* The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. *After August 23, 1968,* the Secretary shall not approve any program or project which requires the use of any *publicly owned* land from a public park, recreation area, or wildlife and waterfowl refuge *of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof,* or *any land* from an historic site *of national, State, or local significance as so determined by such officials* unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.

49 U.S.C. § 1653(f) (referred to herein as "section 4(f)"). I think it clear from an examination of the language of the statute itself and the legislative history that whatever authority the Secretary of the Interior may have with respect to the valley under the NHPA, he is not an official with jurisdiction of the valley within the meaning of this statute.

Before the 1968 amendment, the statute appeared to leave to the Secretary of Transportation, as the official who was to approve project or program plans, the determination whether land at issue indeed was a public park, recreation area, wildlife refuge, or historic site. *See Pennsylvania Environmental Council, Inc. v. Bartlett,* 454 F.2d 613, 621–22 (3d Cir. 1971). But the statute as amended in 1968 requires that a protected historic site have "national, State, or local significance" as determined by "the Federal, State, or local officials having jurisdiction thereof." While the language may not be crystal clear, I think that the determination of the state or local historic significance of a privately-owned site such as the valley must be made by the state or local officials in charge of state or local historic preservation activities. *See Pennsylvania Environmental Council, Inc. v. Bartlett, supra,* 454 F.2d at 622–23; *Environmental Defense Fund v. Brinegar,* 6 E.R.C. 1577, 1593–94 (E.D.Pa.1974); *Lathan v. Volpe,* 350 F.Supp. 262, 267–68 (W.D.Wash.1972), *vacated in part on other grounds sub nom. Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974 ) (en banc).[3]

Appellants argue that the use by Congress of the plural "such officials" in section 4(f) demonstrates congressional recognition of the concurrent power of local and federal officials to determine the local significance of historic sites. However, the use of the plural could just as easily be an accommodation to state laws which may lodge historical preservation functions in more than one official. Further, a logical reading of that part of section 4(f) in the context of the question before us resolves the issue against appellants. The statute prohibits the Secretary of Transportation from approving any project "which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge [in three categories, *i. e.*] of national, State or local significance as determined by [three autonomous groups, *i. e.*] the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless . . . ." Applying logical canons of construction to this statute, it declares that each category of property is tied to its appropriate overseer insofar as jurisdiction and the rendering of at least the initial determination of significance are concerned. Each of the three categories is thus tied, respectively, to each of the designated officials; i. e., federal officials to property of "national" significance; property having state significance, to state officials; and property of local significance, to local officials. If this is true, the "as so determined by such officials" clause in section 4(f) would seem to me to require in this case a determination by the local (or perhaps state) officials as a condition precedent to bringing the section 4(f) protections into play.

However, whatever ambiguity may appear from the language of the statute is resolved by the legislative history. The

---

**3.** Appellants assert, on the other hand, that a declaration by local officials of a preference for a highway through a locally significant site does not obviate the need for the special findings required by section 4(f) before the highway can be built. *Named Individual Members of San Antonio Conservation Society v. Texas Highway Department,* 446 F.2d 1013, 1025–27 (5th Cir. 1971), *cert. denied,* 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972). *See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *reversing* 309 F.Supp. 1189, 1195 (W.D.Tenn.1970). These cases are distinguishable in that the sites involved were admittedly "of local significance"; the local officials nevertheless declared their preference for a highway. In this case, on the other hand, the local officials have not declared a preference for a highway through a locally significant site; they have determined that the site is not locally significant. The distinction is important because there are much greater local political constraints against declaring a locally important site "insignificant" than against declaring a preference for a highway. *See* Gray, *Section 4(f) of the Department of Transportation Act,* 32 Md.L.Rev. 327, 384–85 (1973). Finally, it is noteworthy that the appellants here have not directly attacked the local officials' determination that the valley is not significant as an abuse of discretion or against the law. Their only contention is that the Secretary of the Interior's contrary determination is enough to trigger the section 4(f) protections, a contention which I would reject.

committee report accompanying the Senate version of the Federal-Aid Highway Act of 1968 (which included the amendments under discussion here) noted: "The importance of the involvement of local officials in route selection, the public hearing process, and the resolution and establishment of community goals and objectives cannot be overstated. . . . With respect to a number of proposals contained in S. 3418, as reported, local authorities would be vital participants." S.Rep.No.1340, 90th Cong., 2d Sess. 11 (1968), *reprinted in* 1968 U.S.C. Cong. & Admin.News 3482, 3492. While this passage of the report does not refer specifically to the role of local officials in determining the local historic significance of sites under section 4(f), the intent of Congress is made clear by an exchange on the floor of the Senate during discussion of the bill reported by the Conference Committee where the amendment of section 4(f) provoked one of the longest discussions. Senator Randolph, the leader of the Senate conferees, during a lengthy discussion provoked by the amendment of section 4(f) explained the theory thusly: "[I]t is important that the local people have a leadership. They can properly understand the importance of places that someone from afar may not realize. The importance of such places can *only* be understood by local people." 114 Cong.Rec. 24029 (1968) (emphasis added). Some of the Senators, particularly Senator Yarborough of Texas who remembered the Brackenridge-Olmos Park lands case, *see Named Individual Members of San Antonio Conservation Society v. Texas Highway Department,* 446 F.2d 1013 (5th Cir. 1971), *cert. denied,* 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972), voiced the concern that local officials might determine that a park important to the local people was not "significant" within the meaning of section 4(f) so as to avoid the section 4(f) protections and the possibility of having to obtain a costly privately-owned alternate right-of-way. Senator Randolph's response to this concern was not the contention asserted by the appellants that the determination of local significance is not *exclusively* delegated to local officials by section 4(f).

Indeed, he seemed to concede the exclusive authority of local officials by answering that the only protection against local approval of the use of parklands and historic sites was the Secretary of Transportation's authority under Title 23 to use his independent judgment in approving or disapproving highway construction plans. 114 Cong. Rec. 24036–37 (1968).

Senator Randolph's interpretation of the amendment concerning the sole federal check on local determination of historical nonsignificance finds support in the most recent regulations promulgated by the Department of Transportation pertaining to section 4(f) procedures. The regulations provide that no section 4(f) statement is required where the official with jurisdiction determines that the property is not significant. But in that case, the regulations require: "The FHWA [Federal Highway Administration] Division Engineer shall review the agency's non-significance determination to assure himself of the reasonableness of such determinations." 23 C.F.R. § 771.19(c) (Supp.1975).

Thus, there can be no reasonable doubt, in my judgment, that Congress did not intend the Secretary of the Interior to have authority to decide unilaterally whether local sites have historical significance. On the contrary, the legislative history of section 4(f) is clear: the protections extend to an historic site of state or local significance only if the state or local officials with authority to pass on historic values determine that a given site is significant. In this case, the state officials with such authority did not determine that the valley had historic significance, the Secretary of Transportation did not exercise his independent veto power and, therefore, no section 4(f) findings were required.

## II. *The Petroglyph Rock*

The petroglyph rock presents a different problem. The rock was placed on the National Register of Historic Places by the Secretary of the Interior after being nominated by the state Historic Places Review Board. The Board's nomination of the rock

should be considered a finding of local historic significance by state officials with jurisdiction so as to trigger section 4(f) protections, assuming the other prerequisites are met.

Besides "significance," section 4(f) requires that the project "use" the historic site. The appellants alleged that H–3 would use the rock but the trial court made no findings on the issue and the point has not been argued during this appeal. *Brooks v. Volpe*, 460 F.2d 1193, 1194 (9th Cir. 1972), requires a broad construction of the word "use" so as to require section 4(f) statements wherever there is a substantial question of adverse impact. In that case, we held that the encirclement of a public campground by the challenged highway was a "use" of the campground. In *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation*, 362 F.Supp. 627, 638–39 (D.Vt.1973), *aff'd*, 508 F.2d 927 (2d Cir. 1974), the court held that construction of a highway adjacent to a potential wilderness area was a "use" of that land.

In both of these cases, however, the significance of the recreation area depended on its solitude and isolation which would be jeopardized by construction of the highway. In this case, on the other hand, the significance of the rock is primarily as an object of viewing and study which could actually be facilitated by the construction of the highway. This view is supported by the findings of the state Historic Places Review Board. The application for listing on the National Register attached great significance to the rock itself but did not give any weight to the rock's particular location. On the contrary, the Board has found that the valley is only of "marginal" significance.

On the record before us, I doubt whether the appellans have established that the highway would "use" the rock within the meaning of section 4(f). Since the trial court made no findings on the issue, however, I would remand the case for a hearing and a determination by the district judge. Although we have held that the determination of "use" of a site by a highway is a question of law and not fact, *Brooks v.*

*Volpe, supra,* 460 F.2d at 1194, we cannot resolve the legal issue in the absence of evidence and findings on the effect of the highway on the rock.

I am not of the opinion that any of the other issues raised by the appellants require reversal and therefore would reverse and remand only to the limited extent indicated above.