447 F.Supp. 741 (1978)
HALL COUNTY HISTORICAL SOCIETY, INC. and W. L. Norton Agency, Inc., Plaintiffs,
v.
GEORGIA DEPARTMENT OF TRANSPORTATION, Thomas D. Moreland, Individually and as Commissioner of Georgia Department of Transportation, Brock Adams, Individually and as Secretary of the United States Department of Transportation, and United States Department of Transportation, Defendants.
Civ. No. C77-100G.
United States District Court, N. D. Georgia, Gainesville Division.
March 7, 1978.
*742 *743 *744 Furman Smith, Jr., Atlanta, Ga., David A. Fox, Harmon T. Smith, Jr., Gainesville, Ga., for plaintiffs.
Stanley F. Birch, Jr., Gainesville, Ga., for plaintiff-intervenor W. L. Norton Agency, Inc.
Arthur K. Bolton, Atty. Gen., Roland F. Matson, Asst. Atty. Gen., Atlanta, Ga., for defendants.
Robert J. Castellani, First Asst. U. S. Atty., Atlanta, Ga., for Federal defendants.

ORDER
O'KELLEY, District Judge.
This is a civil action for declaratory as well as preliminary and permanent injunctive relief pursuant to (1) the National Environmental Policy Act of 1962, 42 U.S.C. § 4331 et seq. [hereinafter "NEPA"]; (2) section 4(f) of the Transportation Act, 23 U.S.C. § 138 [hereinafter "section 4(f)"]; (3) the Federal-Aid Highways Act, 23 U.S.C. § 128; (4) the National Historic Preservation Act, 16 U.S.C. § 470 et seq.; and (5) applicable Georgia law. In two counts, plaintiff Hall County Historical Society [hereinafter the "Historical Society"] seeks (1) to enjoin the defendants from proceeding with a portion of a federal-aid highway project in Gainesville, Georgia, [hereinafter "the project"] known as "the Green Street extension," and (2) both a judgment declaring the federal defendant's delegation of its NEPA responsibilities to defendant Georgia Department of Transportation [hereinafter "GDOT"] illegal and void and an injunction restraining such illegal delegation of NEPA responsibilities unless and until the GDOT repudiates and rescinds a certain "Memorandum of Understanding." Plaintiff-intervenor, the W. L. Norton Agency, Inc. [hereinafter the "Norton Agency"], seeks relief substantially similar to that sought in count one of plaintiff's complaint and, in addition, specific performance of an alleged agreement with defendant GDOT or, in the alternative, damages and other appropriate relief from defendant GDOT as a result of defendant GDOT's alleged breach of said agreement. Subject matter jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343, 1361, 5 U.S.C. § 701 et seq., and upon principles of ancillary jurisdiction. This action is presently before the court on (1) the defendants' motions to dismiss the action under rule 12(b) of the Federal Rules of Civil Procedure for lack of standing, lack of subject matter jurisdiction, and laches; (2) the plaintiff's and the plaintiff-intervenor's requests for preliminary injunctive relief pursuant to rule 65 of the Federal Rules of Civil Procedure; and (3) the motion of defendant Thomas D. Moreland to dismiss him as an individual defendant.

I.

STATEMENT OF THE CASE

The Project
This action arises from a highway project funded and developed under the Federal-aid highway program for the improvement of approximately .877 miles of U.S. Route 129 within the City of Gainesville, Georgia. *745 Under the Federal-aid highway program the federal government generally does not build highways. Rather, it administers a grant-in-aid program to assist the states which are responsible for highway design and construction. Consequently, each step in the development of a particular project normally consists of a state request for approval and a federal response thereto, which is governed by compliance with the applicable statutory and regulatory requirements. Thus, the project in question logically involves the actions of both state defendants, the Georgia Department of Transportation and its Commissioner, Thomas D. Moreland, and federal defendants, the United States Department of Transportation and its Secretary, Brock Adams.
As originally conceived in 1965, the Gainesville project was designed primarily to create a Central Business District bypass for the purpose of improving traffic flow and reducing congestion in the City of Gainesville by diverting traffic from the Central Business District portion of U.S. 129 to an upgraded and widened Sycamore Street. As proposed at a public location hearing held on July 14, 1966, the Gainesville project was to extend 0.76 miles along Sycamore Street from Summit Street to North Green Street.
In 1972 an environmental review of the Gainesville project, as originally proposed, was undertaken in accordance with the NEPA resulting in Federal Highway Administration approval of a document referred to as "Negative Declaration." The "Negative Declaration" was prepared to evidence and support a determination that although the Gainesville project might be considered "a major federal action," it would not have a "significant effect" upon the quality of the human environment.
On January 17, 1973, following appropriate notices in the local Gainesville newspaper, The Times, and in local radio station broadcasts, "a design public hearing" was held in accordance with 23 U.S.C. § 128. Although the notices for the hearing itself described the Gainesville project as extending along Sycamore Street from Summit Street to North Green Street, with a transition area on North Green Street ending 500 feet to the north on Green Street, the Negative Declaration, copies of which were made available at the hearing, made no reference to such a "Green Street extension" for transition lanes and showed the project as terminating at the intersection of Sycamore Street and North Green Street. However, the uncontradicted testimony of Mr. Hal Rives, State Highway Engineer for defendant GDOT, indicates that the possible effects of the Green Street transition lanes were specifically discussed by several individuals who attended the hearing. Subsequently, a design study report on the Gainesville project prepared by the GDOT together with a transcript and certification of the design public hearing and request for design approval were submitted by the GDOT to the Federal Highway Administration. The Federal Highway Administration approved the design on April 9, 1973, and notice of design approval was then published in The Times.
Finally, in 1977, pursuant to the requirements of 23 C.F.R. § 771.11(h), the GDOT conducted a reevaluation of the project as it was altered from the original proposals to determine whether the alterations would result in any substantial changes in the potential social, economic, or environmental effects of the project. The update included a discussion of air and noise quality, traffic projections, historic preservation, and concluded that the project modifications would not result in any significant changes in the project's effects on the environment. The defendants allege that the Federal Highway Administration reviewed the GDOT environmental update and adopted it on June 24, 1977. A $1,198,000 contract for the project was awarded on August 9, 1977, and actual construction began on September 26, 1977.

The Green Street Historic District
The Green Street Historic District [hereinafter "the District"] is a distinct section of the City of Gainesville located along both *746 sides of Green Street from 380 Green Street to the Glenwood Road intersection. The buildings in the District are predominantly Victorian and Neo-classical Revival residences dating from the late 19th and early 20th centuries. Although some of the residences have been adapted to commercial or multi-family uses, the District as a whole has maintained its authentic character and thus continues to be a significant visual and cultural amenity of Hall County and North Georgia. In order to preserve the historic character of the District, a special zoning classification was created by the City of Gainesville, and on August 15, 1975, the District was listed on the National Register of Historic Places. Notice of the listing was published in the February 10, 1976, issue of the Federal Register. The protection of the District has been an ongoing project of the plaintiff, Historical Society.

The Intervention
Pursuant to rule 65(a)(2) of the Federal Rules of Civil Procedure, trial of the action on its merits was advanced and consolidated with the evidentiary hearing on plaintiff's request for preliminary injunctive relief held on December 29, 1977. In the course of the December 29, 1977, hearing, the court stated that the evidence appeared to indicate that a certain city lot occupied by the Norton Agency was situated within the District. Because the project plans at that time called for a physical taking of a portion of the Norton Agency property, this statement from the bench prompted the GDOT to revise the project plans, deleting any physical use of the Norton property, in order to assure that project construction would be terminated outside the boundaries of the District. The Norton Agency apparently received notice from the GDOT of these revisions in the project plans on January 3, 1978. Subsequently, on January 18, 1978, alleging that it had secured an agreement with the GDOT to obtain an earlier alteration of the project plans to provide for a left turn access into its property in consideration for its conveyance to the GDOT of a parcel of said property, and that defendant GDOT has wrongfully attempted to rescind this agreement, the Norton Agency filed an application to intervene in the case sub judice as a party plaintiff pursuant to rule 24(a)(2) of the Federal Rules of Civil Procedure. Based upon the allegations in the proposed complaint of the Norton Agency, the court determined that the Norton Agency had an interest relating to this action, that disposition of this action may impair its ability to protect its interest "as a practical matter," and that its interest was not adequately represented by plaintiff Historical Society, and, therefore, granted the Norton Agency's application for intervention on February 8, 1978. In a subsequent evidentiary hearing held on February 15, 1978, at the court's request, for the limited purpose of clarifying the record with respect to compliance with the National Historic Preservation Act, the intervenor was also permitted to present evidence bearing on issues arising under the NEPA and section 4(f), to the extent that the intervenor's unique interests thereunder were not adequately represented by plaintiff Historical Society in the December 29, 1977, hearing.[1]

*747 II.

STANDING
Because the defendants herein have challenged the plaintiff's standing to bring the present action and because the plaintiff does not rely upon a specific statutory provision to invoke the judicial power, the court must determine whether the plaintiff itself has sustained or is in immediate danger of sustaining some direct, concrete injury. Linda R. S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); Ex parte Levitt, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937). The plaintiff alleges that, because it has devoted substantial efforts to the protection and preservation of the District by opposing previous attempts by the City of Gainesville to widen Green Street, and by assisting in the preparation of the nomination of the District to the National Register of Historic Places, and because it has an ongoing interest in the District and in historical preservation in Hall County and throughout North Georgia in general, it has been injured and continues to be injured by (1) the defendants' failure to fully consider the adverse environmental effects the project will have on the District as required by various federal statutes and (2) by the federal defendants' alleged illegal delegation of their statutory duties under the NEPA to the GDOT by and through a so-called "Memorandum of Understanding." Defendants argue, however, that the plaintiff has no standing to bring an action on either of these counts because the injuries it alleges amount to no more than potential non-economic injuries of an abstract nature that would be shared by all citizens of the City of Gainesville and North Georgia, citing Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). The court disagrees. Standing is no longer confined to those who show economic harm, nor is it necessarily to be denied because the alleged injury is commonly shared. See United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Accordingly, in view of plaintiff's allegations in paragraph 4 of the complaint that several of its members reside or own property in the District, the court concludes that the plaintiff has alleged an immediate threat of sufficient individualized harm to itself and its members, albeit merely aesthetic or environmental, to have standing to challenge the defendants' compliance with the various federal statutory requirements in the course of the planning and the development of the project, and the Green Street extension thereof, as set forth in count one of the complaint. Id. Contrariwise, by plaintiff's own admission the alleged "Memorandum of Understanding" between officials of the GDOT and the Georgia Department of Natural Resources regarding procedures for the nomination of sites for inclusion in the National Register of Historic Places postdated the nomination process which applied to the District.[2] Accordingly, the court concludes that regardless of the admirable work done by plaintiff Historical Society to promote historic preservation in North Georgia, it has failed to allege sufficient individualized harm to itself or its members to have standing to challenge the legality of the abovementioned "Memorandum of Understanding." See, e. g., Reservists Committee to Stop the War, supra; Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). For the above reasons, count two of plaintiff's complaint is hereby dismissed as non-justiciable.

III.

JURISDICTION
In support of its motion to dismiss for lack of subject matter jurisdiction, defendant GDOT argues, first, that the plaintiff *748 has failed to meet its burden to show by a preponderance of the evidence that it does not appear "to a legal certainty" that the amount in controversy herein is less than $10,000, citing Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658 (5th Cir. 1971). Because it is well settled that in injunction actions the amount in controversy is not the amount a plaintiff might recover at law but, rather, is the value of the rights to be protected, and because the rights being protected herein generally concern allegations of threatened non-economic injuries of an aesthetic or environmental character not readily capable of a dollar valuation, the court concludes that there is a substantial probability that the amount in controversy herein exceeds the jurisdictional amount required under 28 U.S.C. § 1331(a). See, e. g., Scherr v. Volpe, 336 F.Supp. 882 (W.D.Wis. 1971), aff'd, 466 F.2d 1027 (7th Cir. 1972).
Second, defendant GDOT submits that 5 U.S.C. § 702 et seq. is not a valid basis of jurisdiction herein because plaintiff has failed to allege or demonstrate individual injury, citing West Virginia Highlands Conservancy v. Island Creek Coal Co., 441 F.2d 232 (4th Cir. 1971). However, as discussed supra, the court has concluded that the plaintiff has set forth sufficient allegations of individualized harm to itself and its members to have standing to assert the claims stated in count one of the complaint. Accordingly, without reaching the merits of each of the jurisdictional allegations herein, the court simply concludes that it has sufficient jurisdiction over the plaintiff's action under 28 U.S.C. § 1331 and 5 U.S.C. § 701 et seq. and, therefore, over the plaintiff-intervenor's claim for breach of an alleged agreement with defendant GDOT under principles of ancillary jurisdiction.

IV.

LACHES
Arguing that plaintiff's rights under the various federal statutes asserted as a basis for relief in count one of plaintiff's complaint became fully enforceable several years prior to December 5, 1977, the date on which this action was brought, defendants submit that this action is barred under the equitable doctrine of laches, which has long been applied in the environmental context. See, e. g., Clark v. Volpe, 342 F.Supp. 1324 (E.D.La.), aff'd, 461 F.2d 1266 (5th Cir. 1972). Before the doctrine of laches can be invoked, it is well established that the defendant has the burden of showing (1) that the plaintiff delayed in asserting its rights; (2) that the delay was not excusable; and (3) that the defendants are unduly prejudiced thereby. Watz v. Zapata Off-Shore Co., 500 F.2d 628 (5th Cir. 1974). Applying this test to the case sub judice in view of the additional standards which have been grafted upon the test in the context of environmental litigation, it is clear that the defendants cannot meet their burden with respect to the second and third elements. When plaintiff's officers became aware of the plans for the Green Street extension late in 1975, the plaintiff's past president promptly communicated its objections to both the state and federal defendants. Once the unique historic character of the District and its National Register listing were brought to the attention of the defendants, plaintiff became entitled to presume that the defendants would comply with the law. See Steubing v. Brinegar, 511 F.2d 489 (2d Cir. 1975). Similarly, within 30 days after the construction contract was awarded, plaintiff retained an attorney who notified the defendants of plaintiff's intention to seek an injunction should defendants elect to proceed with the Green Street extension. Plaintiff apparently filed suit only when it became evident that its continuing negotiations with the defendants would not be successful, but well before any work was scheduled to commence on "the Green Street extension"  the only portion of the project in dispute herein. Because the work on the Green Street extension of the Gainesville project has not yet begun, the court believes that the present costs of altering or abandoning "the Green Street extension" would not outweigh the public interest in, and the potential public benefits of, injunctive relief pending compliance with any statutes *749 which may have been violated. See Ecology Center of Louisiana, Inc. v. Coleman, 515 F.2d 860 (5th Cir. 1975); Save the Courthouse Committee v. Lynn, 408 F.Supp. 1323 (S.D.N.Y.1975). Therefore, for the above reasons, the court concludes that this action is not barred by the doctrine of laches.

V.

THE MERITS

The National Environmental Policy Act [NEPA]
NEPA, 42 U.S.C. § 4332 et seq. requires all federal agencies to file a detailed Environmental Impact Statement [hereinafter "EIS"] with respect to every major federal action "significantly affecting the quality of the human environment." In the case sub judice plaintiff and plaintiff-intervenor have challenged the defendants' decision not to file an EIS in connection with the project and, therefore, are disputing the adequacy of the environmental review undertaken by defendant GDOT with respect to the project, as evidenced by and embodied in the "Negative Declaration" and update thereto, both of which received Federal Highway Administration approval. It is well settled that the standard for judicial review of an agency's threshold decision not to file an EIS is one of reasonableness. See, e. g., Save Our Ten Acres v. Kreger, 472 F.2d 463 (5th Cir. 1973). Thus, although the plaintiffs have been somewhat successful in questioning the probity and adequacy of the defendants' initial study of the environmental impact of the project, after hearing direct evidence on the potential environmental impact of the project, the court concludes that the plaintiffs have failed to meet their burden of showing that the agency decision not to file an EIS was unreasonable. See Hiram Clarke Civic Club v. Lynn, 476 F.2d 421 (5th Cir. 1973). In the December, 1977, and February, 1978, hearings plaintiffs raised no adverse environmental factors that were not considered, albeit superficially, by the defendants before they found that the project would produce no significant environmental impact. Finally, the court finds that the plaintiffs' claims that the "Negative Declaration" failed to consider the total length of the highway project between "logical termini" express little more than unsubstantiated allegations of segmentation. In his testimony Mr. Hal Rives, Assistant State Highway Engineer for the GDOT, stated unequivocally that GDOT has no plans to widen Green Street through the District. Because plaintiffs have produced no evidence to the contrary, the court concludes that plaintiffs' segmentation arguments must be rejected outright. Accordingly, plaintiffs' requests for injunctive relief under the NEPA should be and are hereby denied.

Section 4(f) of the Transportation Act
Section 4(f) of the Transportation Act, 23 U.S.C. § 138, provides, in pertinent part, that:
the Secretary shall not approve any program or project which requires the use of . . . any land from an historic site of national, State, or local significance . . . unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such . . . historic site resulting from such use. (Emphasis added.)
Both plaintiff and plaintiff-intervenor maintain that the project has used and will "use" land within the District and, therefore, because no section 4(f) statement has been prepared by defendants herein, that section 4(f) has been violated. Specifically, plaintiff-intervenor contends that because defendant GDOT has taken a parcel of the Norton Agency city lot situated within the District in exchange for a binding promise to provide a left turn access lane to the Norton property in the course of construction of the project, and because plaintiff-intervenor is entitled to specific performance of its agreement with defendant GDOT there has been and will be a physical "use" of District land. The court disagrees. First, assuming arguendo, that the plaintiff can prove the existence of the alleged *750 agreement with defendant GDOT, because of the strong public policy vesting full control and supervision of state highways with defendant GDOT, the court concludes that in the absence of allegations of arbitrary and capricious abuse of this discretion by defendant GDOT, the plaintiff-intervenor is not entitled to specific performance. See Pittman v. City of Jesup, 232 Ga. 635, 208 S.E.2d 456 (1974). See generally Ga.Code Ann. § 95A-302(a), 95A-618-22. Similarly, although the court finds that the Norton Agency city lot is situated within the District, because the map attached to the District nomination to the National Register of Historic Places is somewhat misleading with respect to the Norton Agency property, and because the record clearly indicates that the defendants have acted in good faith to avoid any physical use of District land by making all necessary revisions in the project plans, the court concludes that plaintiffs have failed to carry their burden of showing that there has been or will be a physical use of District land.
The absence of any physical "use" of District land notwithstanding, the plaintiff and plaintiff-intervenor argue that the project will have certain alleged secondary effects upon the District constituting a "constructive use" of District land, citing Brooks v. Volpe, 460 F.2d 1193 (9th Cir. 1972). See also Stop H-3 Assoc. v. Coleman, 533 F.2d 434 (9th Cir. 1976). But see id. at 446 (Wallace, J., dissenting). In the court's view, however, these decisions from the Court of Appeals for the Ninth Circuit cited by plaintiff are clearly distinguishable from the case sub judice in that the projects being challenged in those cases were shown to have a direct and significant impact on section 4(f) lands. Similarly, although the Court of Appeals for the Fifth Circuit has cited these Ninth Circuit decisions in dicta, it has not adopted a "constructive use" interpretation of section 4(f). See Louisiana Environmental Society v. Coleman, 537 F.2d 79 (5th Cir. 1976). Finally, assuming arguendo, that section 4(f) should be construed to apply to circumstances where there is a "constructive use" as well as an actual physical use of land from any historic site, the burden is upon the plaintiff to establish by a preponderance of the evidence that the project has or will involve a "constructive use" of District land. See Arkansas Community for Reform Now [ACORN] v. Brinegar, 398 F.Supp. 685 (E.D.Ark.1975), aff'd, 531 F.2d 864 (8th Cir. 1976). Although plaintiff-intervenor presented expert testimony to support its allegations that the project would have an adverse economic impact on the Norton Agency property, all such testimony was predicated upon the assumption that the project would result in an increased traffic volume on Green Street. Yet not one scintilla of evidence was offered to support this assumption. Moreover, the court is unconvinced that there was any Congressional purpose behind the enactment of section 4(f) to protect commercial property from potential economic decline. It is manifest that section 4(f) was designed "to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfall refuges, and historic sites." For the above reasons, the court concludes that the plaintiff and the plaintiff-intervenor have failed to meet their burden of showing any "use" of District land in the case sub judice. Accordingly, the plaintiffs' requests for injunctive relief under section 4(f) should be and are hereby denied.

The Federal Aid to Highways Act 23 U.S.C. § 128
The plaintiffs argue that a new design public hearing is required with respect to "the Green Street extension" pursuant to 23 C.F.R. § 790.6(c), which provides that:
The opportunity for another public hearing shall be afforded in any case where proposed locations or designs are so changed from those presented in the notices . . . or at a public hearing as to have a substantially different, social, economic, or environmental effect . ..
The court concludes, however, that defendants have shown that the Green Street portion of the project was included in the descriptions of the project used in all public *751 notices in connection with the January 17, 1973, design hearing and that the possible effects of widening a portion of Green Street were specifically discussed at that hearing. Therefore, plaintiffs' requests for injunctive relief under 23 U.S.C. § 128 should be and are hereby denied.

The National Historic Preservation Act
In pertinent part, 16 U.S.C. § 470f provides:
The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State . . . shall, prior to the approval of the expenditure of any Federal funds on the undertaking . . take into account the effect of the undertaking on any district, site, building, structure or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment with regard to such undertaking.
Pursuant to this Congressional mandate, in consultation with various federal agencies, the Advisory Council on Historic Preservation has established procedures regarding the preservation and enhancement of non-federally owned historic and cultural properties to be followed by all federal agencies in the execution of any agency "undertaking." See 36 C.F.R. § 800.3-.10.[3] Plaintiffs contend (1) that the state determination that the project had no effect upon the District, and the Federal Highway Administration's concurrence in this determination of no effect, were unreasonable and (2) that the Federal Highway Administration, in effect, simply "rubber stamped" the state's determination in the case sub judice. Without finding that the evidence adduced at the December, 1977, and February, 1978, hearings shows that the joint state-federal determination of no effect was unreasonable, the court concludes that the record discloses an improper delegation of Federal Highway Administration responsibilities under the National Historic Preservation Act and the regulations promulgated thereunder. In the case sub judice Federal Highway Administration officials failed to undertake any independent studies, reports, or evaluations of the project's potential environmental effects. Nor was any independent effort made to even properly identify properties located within the area of the project's potential environmental impact that are included in or eligible for inclusion in the National Register. In short, the record demonstrates little more than blind reliance by Federal Highway Administration officials upon the state's determination and findings.[4] If Congress had intended that federal agencies be bound by the conclusions of the state authorities, they would have clearly provided for such delegation. While joint participation by federal and state officials may, under the proper circumstances, *752 be totally consistent with the Congressional intent behind 16 U.S.C. § 470f, the court holds that this statute requires that the determinations of effect, adverse effect, or no effect by the appropriate federal agency official be an independent one, and not simply a "rubber stamp" of the state's work. For the above reasons, the plaintiffs' requests for injunctive relief predicated upon noncompliance with the National Historic Preservation Act should be and are hereby granted.

VI.

THE RELIEF
Pending Federal Highway Administration compliance with 16 U.S.C. § 470f and the applicable regulations thereunder at 36 C.F.R. § 800.3-.10, the defendant Federal Highway Administration, its employees, agents, and all others in active concert with it, are hereby enjoined from disbursing federal funds for the construction of that portion of the project known as "the Green Street extension." The court holds, however, that the defendant Federal Highway Administration may disburse such funds as are reasonably necessary to complete the project in accordance with current project plans up to the intersection of Green Street and Sycamore Street and including such funds as may reasonably be necessary to allow a viable connection of the Sycamore Street portion of the project with Green Street. Because to allow defendant GDOT to complete construction of that portion of the project known as "the Green Street extension" without the use of federal funds would, in effect, result in a defeat of Congressional intent and of the policies behind the National Historic Preservation Act, the court concludes that unless and until defendant GDOT withdraws all requests for disbursement of further federal funds for the project construction and immediately and forthwith reimburses the federal government for all funds previously disbursed for the project construction, defendant GDOT, its employees, agents, and all others acting in concert with it, are hereby enjoined from construction of that portion of the project known as "the Green Street extension," pending the Federal Highway Administration's compliance with the National Historic Preservation Act. See Ely v. Velde, 497 F.2d 252 (4th Cir. 1974); San Antonio Conservation Society v. Texas Highway Department, 446 F.2d 1013 (5th Cir. 1971). In the present case compliance with the National Historic Preservation Act shall include, in addition to compliance with the statute and the applicable regulations as interpreted in this order, immediate reference of this matter to the Advisory Council for Historic Preservation for their review and consideration. Pending final resolution of plaintiff-intervenor's ancillary claim for breach of the alleged agreement with defendant GDOT, and pending final court approval of any subsequent compliance with the National Historic Preservation Act as defined in this order, this court shall retain supervisory jurisdiction over the parties until otherwise ordered. Subject to court approval, defendant GDOT may undertake such construction on Green Street as is reasonably necessary to connect the Sycamore Street portion of the project with Green Street.
In summary, defendants' motions to dismiss are hereby granted with respect to count two of plaintiff Historical Society's complaint but are hereby denied in all other respects. Because the motion of defendant Thomas D. Moreland to dismiss this action against him as it is brought against him in his individual capacity, rather than as the Commissioner of the Georgia Department of Transportation, appears meritorious and is unopposed, it should be and is hereby granted. Plaintiffs' requests for injunctive relief predicated upon noncompliance with the National Historic Preservation Act are hereby granted but are hereby denied in all other respects.
IT IS SO ORDERED this 7th day of March, 1978.
NOTES
[1] Although an intervenor as of right is entitled to fully litigate the merits by pleading and setting forth additional claims and defenses where they arise from the same transaction(s) as the main claim(s) or are ancillary thereto, it is also well settled that an intervenor in equitable proceedings is bound by all prior orders and decrees as though he had been a party from the inception of the suit. See, e. g., Galbreath v. Metropolitan Trust Co. of California, 134 F.2d 569 (10th Cir. 1943); Moore v. Tangipahoa Parish School Board, 298 F.Supp. 288 (E.D.La. 1969). Accordingly, because prior to granting the application for intervention the court had announced that the subsequent hearing was for the limited purpose of clarifying the record with respect to compliance with the National Historic Preservation Act, the court precluded the intervenor from reopening the evidence with regard to any matters where its interests were "adequately represented" by the plaintiff in the December 29, 1977, hearing. This restriction comports with the Advisory Committee Note to the 1966 amendment of rule 24(a) of the Federal Rules of Civil Procedure, which states: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."
[2] The Green Street Historic District was listed on the National Register on August 15, 1975, and the "Memorandum of Understanding" was not executed until February 12, 1976.
[3] In view of the language of 16 U.S.C. § 470f providing that "[t]he head of any such Federal agency shall afford the Advisory Council . . a reasonable opportunity to comment [emphasis added]," the court notes that it has some concern about the propriety of these regulations insofar as the Advisory Council has apparently stated, in advance, that it does not wish to have the opportunity to comment upon all undertakings having "no effect" upon properties included in the National Register when the determination of no effect is to be made by the federal agency rather than the Advisory Council.
[4] Specifically, the court finds that Mr. Herschel Bryant, Georgia Division Administrator for the Federal Highway Administration, delegated his statutory responsibilities under 16 U.S.C. § 470f and 36 C.F.R. § 800.3-.10 to members of his staff and principally, Mr. Thomas Bryan; that neither Mr. Bryan nor any other members of Mr. Bryant's staff ever attempted to identify those National Register properties located within the area of the project's potential environmental impact; that neither Mr. Bryan nor any other member of Mr. Bryant's staff made any written reports, studies, or evaluations of the project's impact on those National Register properties identified by the state authorities to be located within the project's potential environmental impact; and that Mr. Bryant and his staff, without the benefit of any independent reports, studies, or evaluations, in all respects relied upon the state's work in concurring with the state "determination of no effect" made by various agents of defendant GDOT and Mr. David Sherman, the Historic Preservation officer for the state of Georgia.