ALABAMA NURSING HOME ASSOCIATION, an unincorporated association, James H. Estes Enterprises, Inc., d/b/a Estes Health Care Center East, Estes Nursing Home, Inc., d/b/a Estes Health Care Center West, James Estes, d/b/a Estes Health Care Center Double Springs, James H. Estes, d/b/a Estes Health Care Center Riverchase, Cottage Hill Nursing Homes, Inc., d/b/a Cottage Hill Nursing Home, Lakeview Manor, Inc., d/b/a Lakeview Manor, Falkville Nursing Home, Inc., d/b/a Falkville Nursing Home, Perry County Hospital Association, Inc., d/b/a Perry County Nursing Home, Plaintiffs,

v.

Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare, the Department of Health, Education and Welfare, Clayton H. Schmidt, M.D., as Chief, Medical Services Administration, Honorable George C. Wallace, as the "Single State Agency" for Administration of the Alabama Medicaid Program, and Jack E. Worthington, as Alabama Commissioner for Medical Assistance, Defendants.

Alabama Education Association, Robert Albright, Ann Hubbert, Darren Owens, by and through his next friend, Aneta Owens, and David Taffet, by and through his next friend, Linda Taffet, Intervening Defendants.

Civ. A. No. 77–52–N.

United States District Court,
M. D. Alabama, N. D.

Feb. 23, 1979.

---

1. In view of the court's disposition of these actions, it need not address the other issues raised by the parties.

Sikes, Kelly, Edwards & Bryant, Selma, Ala., and Pierson, Ball & Dowd, Washington, D. C., for plaintiffs.

Barry E. Teague, U. S. Atty., Montgomery, Ala., and Eugene Tillman, Dept. of HEW, Human Resources Div., Washington, D. C., for Califano and Dept. of HEW.

William K. Martin, Henry C. Barnett, Herman H. Hamilton, Jr., Sp. Asst. Attys. Gen., Montgomery, Ala., for Schmidt, Wallace & Worthington.

Hobbs, Copeland, Franco & Screws, Montgomery, Ala., for intervening defendants.

## MEMORANDUM OPINION

VARNER, District Judge.

This suit was originally filed by the Alabama Nursing Home Association on February 1, 1977, challenging the Medicaid method of reimbursement to nursing home facilities in Alabama. This cause is submitted for final judgment on the record.

In an Order dated July 12, 1977, this Court found that the Plaintiffs had standing to maintain this suit and found it undisputed that the ceilings on payment rates under the Alabama Medicaid plan then in use were not reasonably cost related. This Court ordered that an amendment conforming the plan to that requirement be filed within 60 days. *Alabama Nursing Home Association v. Califano,* 433 F.Supp. 1325 (M.D.Ala.1977).

The amendment required by that Order was filed and approved by HEW in December, 1977. On March 22, 1978, the Plaintiffs filed a supplemental complaint challenging that amendment. The complaint has been amended several times, both adding and striking counts so that there are presently three counts pending before this Court:

*Count 1:* Plaintiffs charge that the reimbursement methods and standards imposed on providers under the Alabama Medicaid plan are not "reasonable cost related" within the meaning of 42 U.S.C. § 1396a(a)(13)(E).

*Count 5:* Plaintiffs charge that Alabama officials have violated the Alabama Medicaid plan's "assurance of payment" provision by failing to take sufficient steps to assure adequate funding of the Medicaid program.

*Count 6:* Plaintiffs charge that the HEW review process of plans to determine if the requirement of reasonable cost-related reimbursement is met violates duties imposed by federal statutory and regulatory law.

After a background discussion of the Alabama Plan and the federal regulations which govern it, each of these counts will be discussed in turn.

## FEDERAL STATUTORY AND REGULATORY BACKGROUND

Medicaid was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.,* as a cooperative federal-state program to furnish medical assistance to aged, blind or disabled individuals with low incomes. States are not required to establish a Medicaid program, but if they do, the costs of the program are shared by federal and State governments. Among the types of medical assistance provided by the program is the services of nursing home facilities.

Originally, the Medicaid Act contained no specific standard by which nursing homes were to be reimbursed. In 1972, Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(E), was amended to provide:

"A state plan for medical assistance must * * *

"(13) provide * * *

"(E) effective July 1, 1976, for payment of the skilled nursing facility and intermediate care facilit[ies] provided under the plan on a *reasonable cost related basis,* as determine in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary." (emphasis added)

On July 1, 1976, HEW issued regulations to implement the above statute. These regulations are contained in Exhibit A to Plaintiffs' motion for summary judgment. 45 CFR 450.30(a)(3)(iv)(A) provides, in pertinent part:

" * * * (Payment rates shall not be set lower than the level which the state reasonably finds, or in the case of a prospectively determined rate, the level which the State reasonably expects, to be

adequate to reimburse in full such actual allowable costs of a facility that is economically and efficiently operated ) [emphasis added].

On February 6, 1978, HEW issued a statement clarifying and supplementing the final regulations designed to implement the amendment to 42 U.S.C. § 1396a.

"'Reasonable cost related' payments must, at a minimum, be high enough to cover the allowable costs of an efficiently and economically operated facility * *." 43 Fed.Reg. 4862 [Exhibit B to Plaintiffs' Motion for Summary Judgment]

The essence of the Plaintiffs' Count 1 is whether the current Alabama plan violates these provisions.

## THE ALABAMA PLAN

For the purpose of reimbursing costs, the Alabama plan now in effect creates three classes of nursing home care providers—(1) skilled nursing facilities; (2) intermediate care facilities; and (3) combination [i. e., facilities offering both levels of care]. A ceiling rate per patient day is established for each of the classes through the following procedure. First, each facility files a uniform cost report itemizing its costs (e. g., laundry, dietary, administration, etc.). The Alabama Nursing Home Facility Reimbursement Manual imposes limitations on certain costs which may be submitted. These include new construction, consultant services, depreciation, interest expense and others. Second, Medical Services Administration checks each cost report for mathematical accuracy and to insure that the costs reported are allowable. Medical Services Administration uses these costs to project a reimbursement rate for the forthcoming year. The three classes are ranked according to the rate which has been set for each. A ceiling is set at that rate which is the sixtieth percentile for facilities in that class. The current ceiling rates in effect are $24.00 per patient day for skilled nursing facilities (SNF); $20.44 for intermediate care facilities (ICF); and $22.87 for combination.

## COUNT I

### REIMBURSEMENT METHODS AND STANDARDS ARE NOT REASONABLE COST RELATED WITHIN THE MEANING OF 42 U.S.C. § 1396a(a)(13)(E).

1. *There is no valid statistical basis for the ceilings now in effect under the Alabama plan.*

Plaintiffs argue that the sixtieth percentile under the Alabama plan was subjectively determined by Henry C. Vaughn when he held the position of fiscal officer of Medical Services Administration and that there has been no objective statistical determination that the ceiling is sufficient to "reimburse in full such actual allowable costs of a facility that is economically and efficiently operated" as required by 45 CFR 450.-30(a)(3)(iv)(A). Since the determination was subjective, it could be changed at the whim of the fiscal officer of Medical Services Administration. [Since the instigation of this suit, Mr. Vaughn has been replaced in that position by Mrs. Rebecca Beasley].

To substantiate this claim, Plaintiffs rely on the deposition of an expert witness, Richard Kahan, (Exhibit O to Plaintiffs' Motion for Summary Judgment). After performing various statistical tests, Mr. Kahan determined that the lowest ceiling which would meet the requirement of reasonable cost-related reimbursement would be the mean cost plus one-half standard deviation.

Defendants argue that, rather than there being only one reasonable cost-related reimbursement rate, there is a range of reasonableness, and a plan which falls within that range is reasonable cost related. "The fact that 60 percent of all participating facilities are fully reimbursed for allowable costs is the strongest empirical evidence that the rate is sufficient to reimburse fully an economically and efficiently operated facility" [Federal Defendants' brief at p. 8]. Defendants contend that the plan which Mr. Kahan proposes would result in a number of providers being reimbursed less than actual costs. They, therefore, insist that the proposed plan is not inherently better than the one now in use.

Defendants further argue that Congress placed a percentile limitation similar to the one under attack on reimbursement of supplementary medical services, including physician services under Medicare, and has never attempted to analytically prove that percentile. *See,* 42 U.S.C. § 1395u(b)(3).

2. *The sixtieth-percentile limitation is on costs which have already been limited to "reasonable costs" through the application of the Alabama Nursing Home Facility Reimbursement Manual.*

As previously discussed, certain costs which the facilities submit are limited by the Alabama Nursing Home Facility Reimbursement Manual prior to ranking of the facilities and application of the sixtieth-percentile limitation. Plaintiffs argue that the effect of the application of the manual is to change allowable costs into reasonable allowable costs and that Mr. Vaughn stated this in his deposition [Vaughn deposition, pp. 70–75; Plaintiff's reply brief at 13]. Additionally, the Plaintiffs argue that, while a percentile limitation such as the one used in Alabama is used in several other States, none of those States couple it with cost-center limitations.[1]

Defendants argue that both cost-center limitations and the sixtieth-percentile limitation are necessary to insure that only the costs of efficiently-run facilities are reimbursed. Satisfaction of the cost-center limitations does not establish conclusively that a facility is operating efficiently. On the other hand, without the cost-center limitations, a facility might be under the sixtieth percentile but be grossly overcharging in one area [State Defendants' brief at 16; Federal Defendants' brief at 10].

Defendants further state that the differences between Alabama's plan and other States are legally insignificant and were contemplated by 42 U.S.C. § 1396a(a)(13)(E) and implementing regulations giving States flexibility in devising plans.

In summary, on the issues raised in Count 1, the State Defendants assert that Plaintiffs "have not demonstrated that economically and efficiently operated nursing homes are not being reimbursed their full actual allowable costs, their burden in this case" [State Defendants' brief at 20]. This Court agrees.

## COUNT V

STATE DEFENDANTS HAVE FAILED TO EFFECTUATE THE ASSURANCE–OF–PAYMENT CLAUSE IN ALABAMA'S MEDICAID PLAN

Section E of the Alabama Plan provides:

"The State will pay each provider of nursing care services, who furnishes the services in accordance with the requirements of the state plan, the amount determined for services furnished by the provider under the plan according to the methods and standards set forth in paragraph D above."

42 C.F.R. § 450.30(a)(3)(v) requires that such an assurance clause appear in a State plan before it can be approved by the Secretary. Plaintiffs argue that the failure of the State Defendants to obtain sufficient funding for the program from the Legislature constitutes a violation of Section E of the State plan.

State Defendants argue that all of the facilities have been and continue to be reimbursed as specified in the plan and that, until Defendants fail to make such payments, there has been no violation of the payment assurance provision. This Court agrees.

## COUNT VI

FEDERAL DEFENDANTS' PROCEDURES FOR REVIEWING PLAN AMENDMENTS VIOLATE THEIR DUTY TO VERIFY AND VALIDATE THAT

---

1. Cost-center limitations are costs of new construction, consultant services, depreciation, interest and other costs of operating the homes which are likely to result in gain to the owners of the business. These items when considered alone are not cost related, but the total costs include these items and are considered in determining reimbursement. Reimbursement for these items is, therefore, cost related.

THE METHODS AND STANDARDS COMPLY WITH THE REQUIREMENT OF REASONABLE COST–RELATED REIMBURSEMENT.

The statute in question, 42 U.S.C. § 1396a(a)(13)(E), requires that payments be made on "a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods *approved and verified by the Secretary*" (emphasis added). The Secretary commented on this duty in issuing the final regulations:

> " * * * the Secretary, in carrying out his statutory functions of reviewing, approving, and verifying the States' methodologies, has the responsibility to seek to assure that the methodologies will in fact result in reasonable cost-related reimbursement * * *." [41 Fed.Reg. 27300] [Exhibit A to Plaintiffs' Motion for Summary Judgment]

Plaintiffs assert that the Secretary has breached this duty by failing to establish any criteria to define "efficiently and economically operated" facilities. As previously discussed, 42 C.F.R. § 450.30(a)(3)(iv)(A) requires that such facilities be reimbursed full allowable costs. Plaintiffs point out that Jerry Royal, the HEW Region IV official who worked with Alabama in developing its plan, stated that the Secretary has not established criteria to define "efficiently and economically operated" facilities. [Plaintiffs' brief, p. 16, quoting Royal deposition at p. 107].

Plaintiffs further point out that, although the Secretary has approved the Alabama plan, the Alabama Nursing Facility Reimbursement Manual which is a part of that plan has never been reviewed, considered or evaluated at all by HEW [Plaintiffs' brief at 21, quoting Royal deposition, p. 46].

Plaintiffs argue that the Secretary is maintaining inconsistent review processes for plan revisions concerning reimbursement for Medicaid in-patient hospital services [42 U.S.C. § 1396a(a)(13)(D)] and plan revisions concerning reimbursement for nursing home facilities [42 U.S.C. § 1396a(a)(13)(E)]. While presuming the validity of any percentile ceiling above the median in the case of nursing homes, the Secretary denied a proposed change in the method of in-patient hospital reimbursement by the State of Massachusetts because the State failed to "analytically demonstrate" that the change represented reasonable costs [See Plaintiffs's brief, pp. 16 & 23, Exhibit V to Plaintiffs' Motion for Summary Judgment]. While the Secretary may have the power to require "analytical" demonstrations of reasonable cost relationship, this Court has been cited to no requirement that it require each participating State to do so. The cost to the public of such demonstrations should be avoided unless reasonable cause appears to require such.

In support of their contentions, Plaintiffs cite *Hall County Historical Society, Inc. v. Georgia Department of Transportation*, 447 F.Supp. 741 (N.D.Ga.1978). There the United States Department of Transportation was required under the applicable federal statute to take into account the effect of any project on historical sites before approving funding. The Court found that the Department breached its duty by relying on the State to make that determination and required the Department to undertake independent evaluation of the project's potential effects (447 F.Supp. at 751). The Court is of the opinion that *Hall County* is not controlling herein.

Defendants argue that the crucial issue in the case is whether or not the Alabama plan complies with statutory and regulatory requirements. If it does, the method used by the Secretary is not in question as the plan would have been approved under any method used (Federal Defendants' brief at 16). In addition, there was no necessity for a statistical analysis of the Alabama plan since HEW worked closely with Alabama officials in designing the plan and had continuing contacts during the year-long period in which it was developed (Federal Defendants' brief, pp. 16–17, Royal deposition at 90–98).

There is a judicial presumption of the validity of administrative action. *Udall v. Washington, Virginia and Maryland Coach Co.,* 130 U.S.App.D.C. 171, 398 F.2d 765 (1968); *Maryland-National Capital Park & Planning Commission v. Lynn,* 168 U.S. App.D.C. 407, 514 F.2d 829 (1975). Therefore, this Court must presume that the actions taken by the Secretary of HEW in reviewing the Alabama plan are valid until a showing to the contrary is made by the Plaintiffs by a preponderance of the evidence.

In the opinion of this Court, the intention of Congress to give flexibility to the States in developing methods for reimbursement is a factor which weighs heavily in favor of the Defendants. It would defeat the possibility of any flexibility if every State were required to present HEW with objective statistical proof that its plan reimbursed all facilities their reasonable costs. "The legislative history makes clear Congress' intent to give up a certain amount of precision in order to afford States the option to use simpler and less expensive methodologies." 41 Fed.Reg. 27303 (1976).

While the HEW Central Office requires that a State plan include a statement that its methods and standards will result in "efficiently and economically operated facilities" receiving actual allowable costs, it does not require that the State or HEW Regional Offices submit any documentation or analysis to support that statement.

This Court is of the opinion that the Plaintiffs have failed to establish by a preponderance of the evidence that the Secretary's procedures for reviewing amendments of plans are improper.