Gayle **HATMAKER**, individually, and David Edwards, individually, Plaintiffs,

v.

The **GEORGIA DEPARTMENT OF TRANSPORTATION**, By and Through the Commissioner of the Georgia Department of Transportation, Wayne **SHACKELFORD**,

and

The United States Department of Transportation, Defendants.

Civil Action No. 1:95–cv–185–2(WLS).

United States District Court, M.D. Georgia, Albany–Americus Division.

June 12, 1997.

---

Wilbur T. Gamble, III, Dawson, GA, David Jonathan Grindle, Columbus, GA, for Gayle Hatmaker and David Edwards.

Cathy A. Cox–Brakefield, George P. Shingler, Atlanta, GA, for Georgia Dept. of Transp.

### ORDER

SANDS, District Judge.

Presently before the Court is Defendants' motion to dissolve and dismiss the preliminary injunction entered by the Court in the above-styled action in October 1995.

The October 1995 injunction was based upon a finding that the Secretary of the United States Department of Transportation's ("the Secretary") approval of the use of federal funds for the road widening project at issue in this litigation was given in violation of § 4(f) of the Department of Transportation Act of 1966, 49 U.S.C.A. § 303 (Supp. 1995)[1], and § 18 of the Federal–Aid Highway Act of 1968, 23 U.S.C.A. § 138 (1990).[2] In reaching this decision, the Court looked to 23 C.F.R. § 771.135(e), a regulation governing the applicability of the protections of § 4(f) to an historic site, or questionably historic site, the integrity of which may be jeopardized by a federal-aid highway project. Section 771.135(e) states in relevant part:

> The section 4(f) requirements apply only to sites on or eligible for the National Register [of Historic Places] unless the Administration determines that the application of section 4(f) is otherwise appropriate.

At the time of the issuance of the injunction, the record clearly showed that the Friendship Oak was not listed on the National Register of Historic Places ("National Register"). However, the Court found that the state Defendants' failure to include any information regarding the Friendship Oak in their application for Federal–Aid Highway funds improperly precluded the statutorily required decision of the Secretary as to (1) the eligibility of the tree for inclusion on the National Register, and (2) whether to exercise the Administration's discretion under § 771.135(e) to apply § 4(f) protections to the tree. In the total absence of such decisions by the Secretary, this Court could not properly review the Secretary's ultimate determination to federally fund the road widening project that is the subject of this litigation. Accordingly, the Court remanded the case to the Secretary for a determination of whether the Friendship Oak and the surrounding area required § 4(f) protection or other regulatory action pursuant to all applicable federal laws.

On October 23, 1996, the Defendants filed a notice of compliance with the Court's injunctive order, and on December 18, 1996, the Defendants filed a supplemental notice of

---

**1.** Section 4(f) of the Department of Transportation Act, 49 U.S.C.A. § 1653(f), was repealed in 1983 but was recodified without substantial change at 49 U.S.C. § 303.

**2.** Section 18 of the Federal–Aid Highway Act, 23 U.S.C.A. § 138, is virtually identical to section 4(f) of the Department of Transportation Act, 49 U.S.C.A. § 303. For purposes of this Order, the statutes will be referred to collectively as " § 4(f)" or "section 4(f)." Section 4(f) states: (a) It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the country-side and pubic park and recreation lands, wildlife and waterfowl refuges, and historic sites. (b) The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by transportation activities or facilities. (c) The Secretary may approve a transportation program or project requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if—(1) there is no prudent and feasible alternative to using the land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

compliance. By these notices of compliance, the Secretary concluded:

> [T]he tree within the intersection of Philema Road and North Jefferson Street is neither on nor eligible for inclusion on the National Register of Historic Places. Consequently, the provisions of Section 4(f) are inapplicable. Additionally, we have exercised the agency's discretion under 23 C.F.R. § 771.135(e) and have declined to invoke Section 4(f).

*Defendants' Notice of Compliance and Motion to Dissolve and Dismiss* at 2 [hereinafter "Defendants' Motion to Dissolve and Dismiss"].

### Discussion

As this Court stated in the October 1995 order granting injunctive relief: "This case is not simply about a tree. This controversy is about the integrity of the legislative process." This much has remained constant since the issuance of that order. Thus, the question presently at issue is not whether the Court believes that the protection of the Friendship Oak is favorable to the destruction of the Friendship Oak, or vice-versa. Rather, the singular purpose of judicial review in this case is to determine whether the mandates set forth by Congress to implement a policy of national concern have been adhered to by the Defendants' in the decision-making process surrounding the tree. This is both the basis and the limit of this Court's jurisdiction in this action.

In this light, the Court must presently consider two separate decisions by the Secretary. The first is the determination that the Friendship Oak is neither on nor eligible for inclusion on the National Register and thus not subject to the restrictions of § 4(f). The second is the decision not to exercise the discretion, vested with the Secretary pursuant to 23 C.F.R. § 771.135(e), to provide § 4(f) protection to the Friendship Oak for reasons other than those statutorily mandated by Congress.

### A. Eligibility for § 4(f) Protection

"Section 4(f) evidences Congress' response to growing public concern over the preservation of our nation's parklands, recreation areas, wildlife and waterfowl refuges, and historic sites...." *Druid Hills Civic Association, Inc. v. Federal Highway Administration,* 772 F.2d 700, 713–14 (11th Cir. 1985). By enacting § 4(f), Congress gave a clear mandate that protection of § 4(f) properties is to be given paramount importance in the planning and execution of federally funded construction projects. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 412, 91 S.Ct. 814, 821–22, 28 L.Ed.2d 136. In fact, once a property has been designated as a § 4(f) property, the monetary expense required to protect that property in conjunction with a roadway construction project is of minimal relevance. The Secretary may only approve a transportation project that makes use of a § 4(f) property if "there is no prudent and feasible alternative to using the land...." *Id.* at 411, 91 S.Ct. at 821. "The requirements are stringent. Congress clearly reflected its intent that there shall no longer be reckless, ill-considered, wanton desecration of natural sites significantly related to our country's heritage." *Stop H–3 Association v. Coleman,* 533 F.2d 434, 438 (9th Cir.1976).

While Congress set forth an articulate and distinct standard for the protection of § 4(f) properties, it did not include a specific standard for judicial review in either the Department of Transportation Act or the Federal-Aid Highways Act. Accordingly, the Secretary's administrative decision must be reviewed pursuant to § 706 of the Administrative Procedure Act. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413, 91 S.Ct. 814, 822, 28 L.Ed.2d 136, 5 U.S.C.A. § 706 (1977).

■ In *Overton Park,* the Supreme Court set forth the standard of judicial review under § 706 for determinations by the Secretary about the applicability of § 4(f) to a particular highway project. *Druid Hills, supra,* 772 F.2d at 714. The first step in an *Overton Park* review is to determine whether the Secretary properly interpreted his authority to approve use of a § 4(f) property in a Federal-Aid Highway project as limited to situations where no feasible and prudent alternatives exist. *Overton Park, supra,* 401 U.S. at 415–16, 91 S.Ct. at 823–24; *Druid*

*Hills, supra* 772 F.2d at 714. In the present case, however, the Secretary found that the Friendship Oak is not a § 4(f) property. Therefore, the first phase of review under *Overton Park* is inapplicable to the current analysis.

■ The second step is to determine whether the Secretary's ultimate decision—in this case, the finding that the Friendship Oak is not a § 4(f) property—was "arbitrary, capricious or an abuse of discretion." *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 817; *Druid Hills, supra,* 772 F.2d at 714 5 U.S.C.A. § 706(2)(A). "This assessment requires an evaluation of whether 'the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment.'" *Druid Hills, supra,* 772 F.2d at 714 (quoting *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 823–24). "Although the judicial inquiry should be penetrating, the court is not empowered to substitute its judgment for that of the Secretary." *Druid Hills, supra,* 772 F.2d at 714.

Finally, the Court must determine whether the Secretary's action followed the necessary procedural requirements. *Overton Park, supra,* 401 U.S. at 417, 91 S.Ct. at 824; *Druid Hills, supra,* 772 F.2d at 714.

■ For each of these inquiries, "the focal point for judicial review should be the administrative record already in existence [on the basis of which the administrator's determination was made], not some new record made initially in the reviewing court." *Druid Hills, supra,* 772 F.2d at 714 (quoting *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106, 111 (1973)).

As stated above, in deciding whether the Friendship Oak *requires* § 4(f) status, the Secretary must determine whether the tree is on or eligible for the National Historic Register. *See* 23 C.F.R. § 771.135(e). To be considered for the National Register a property or site must meet the regulatory requirements promulgated pursuant to the National Historic Preservation Act (NHPA). 16 U.S.C.A. § 470a. The criteria for evaluation under NHPA are set forth in 36 C.F.R. § 60.4, which provides, in pertinent part:

The quality of significance in American history, architecture, archeology, engineering, and culture is present in districts, sites, buildings, structures, and objects that possess integrity of location, design, setting, materials, workmanship, feeling, and association and

(a) that are associated with events that have made a significant contribution to the broad patterns of our history; or

(b) that are associated with the lives of persons significant in our past; or

(c) that embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction; or

(d) that have yielded, or may likely yield, information important in prehistory or history.

Pursuant to the Court's October 1995 order, the Georgia Department of Transportation ("GDOT") conducted an extensive study of the historic value of the Friendship Oak in light of the criteria for eligibility on the National Register. Since the Friendship Oak is not a man-made site, characteristics of design and construction were not evaluated. Upon completion of this historic evaluation, GDOT submitted its evidence and conclusions to the Secretary. The Secretary then conducted an independent review and reached an independent determination that the Friendship Oak is not eligible for inclusion on the National Register.

In conducting their evaluation, GDOT researched the historic associations of the Friendship Oak in several contexts, including: Native Americans; early trails and roads; land surveys; the Civil War; lynchings; landmark tree registers; the Spanish-American War; and general local significance. As to all but the final three categories, the administrative record is generally uncontroverted. It is with respect to the latter three categories that the Plaintiffs most strongly object to the Secretary's determination not to protect the Friendship Oak under § (4)(f).

### 1. Uncontroverted Areas in the Administrative Record

■ The GDOT study found that until the early nineteenth century Native Americans populated what is now Dougherty County. However, the study could not find evidence of any association between the Friendship Oak, or the immediately surrounding area, and significant activities in Native American history. Nor did the study find a significant relationship between the tree and any continuing activities of Native American culture.

The study also found that many historic trails, roads, and stage coach routes passed through the Albany area during the nineteenth and early twentieth centuries. Again, however, no evidence indicated that these routes were marked by, or even located near, the Friendship Oak. Similarly, an examination of survey maps and notes, made when the region was platted for distribution to white settlers, failed to show any specific identification of an oak tree at the site of the Friendship Oak, either as a boundary tree or as a local landmark.

The GDOT study also incorporated reviews of Civil War reports and maps. Such reviews failed to produce evidence supporting a finding that the Friendship Oak served as a military landmark or stood at the site of any significant event during the Civil War.

In addition, GDOT studied information compiled by the American Civil Liberties Union relating to lynchings in Georgia. Although this information revealed the dark and all too prevalent history of lynchings in southwestern Georgia, the evidence did not connect these lynchings with any tree in the immediate area of the Friendship Oak.

As to all of these areas of historic review, the Plaintiffs have failed to show any issues that are in serious dispute *within* the administrative record. Nor have the Plaintiffs revealed that the administrative record ignored any significant pieces of data in these areas such that the Secretary's ultimate determination could only be construed as clearly erroneous or an abuse of discretion. With regard to these areas of historic study, the Plaintiffs have generally relied upon the bare assertions of historic significance set forth in their complaint. The Secretary was not required to give great weight to such assertions in the face of the contrary evidence within the administrative record.

As to the remaining areas of historic review discussed above, the Plaintiffs' arguments in opposition to the motion to dissolve the October 1995 injunction are based more directly upon the findings and conclusions within the administrative record.

### 2. Inclusion on Landmark Tree Registers and Guide Books

■ The administrative record included a review of several landmark tree registers. One such register, the Georgia Urban Forest Council, Georgia Landmark and Historic Tree Register (the "Urban Forest Council Register"), listed the Friendship Oak as an historic live oak. In order to determine whether inclusion of the Friendship Oak on the Urban Forest Council Register triggered § 4(f), the GDOT study compared the requirements for registration on that list with those of the National Register. The study concluded that the requirements for inclusion on the two registers are not equivalent, with the National Register's standards requiring greater scrutiny.

In order to determine the actual basis for inclusion of the Friendship Oak on the Urban Forest Council Register, the GDOT study examined the application to the Council, which coincidentally was submitted by the Plaintiffs, for consideration of the tree as an historic live oak. The GDOT study concluded that the application was comprised of assertions based wholly, or in large part, on unsubstantiated hearsay. In fact, the application was based upon the same claims of historic significance as argued by the Plaintiffs in the course of this litigation. Thus, the GDOT study made pursuant to the October 1995 injunction addressed each of these contentions. As discussed herein, the GDOT study revealed little, if any, factual support for the claims of historicity set forth in the application to the Georgia Urban Forest Council. Thus, the Court cannot say that the Secretary was clearly erroneous or abused his discretion in deciding to rely on the entirety of factual evidence within the administrative record rather than the simple inclu-

sion of the Friendship Oak on the Urban Forest Council Register in determining that the tree is not subject to § 4(f).

■ The Plaintiffs also argue that the Secretary's decision was improper because the administrative record ignored "Georgia On My Mind," a publication of the Georgia Department of Industry, Trade and Tourism which declares itself to be "the Official Travel Guide for the State of Georgia." *See Plaintiff's Response to Defendants' Motion to Dissolve and Dismiss* at Exhibit A. This travel guide designates the Friendship Oak as an "Attraction" in the Albany area, stating:

> One of only two trees in Georgia that has been recognized as a historical tree and landmark by the Georgia Forrestry [sic] Commission. This 300–year–old live oak has witnessed Albany's past.

Both the administrative record and the entire record of the instant action are devoid of any evidence of an historic designation for the tree by the Georgia Forestry Commission. As the Urban Forest Council Register is the only tree register which designates the Friendship Oak as an historic landmark, the Court concludes that the description of the tree in "Georgia On My Mind" was mistakenly referring to the Urban Forest Council Register as that of the Georgia Forestry Commission. As the Court has already found that the Secretary did not abuse his discretion by rejecting the conclusions of the Georgia Urban Forest Council in favor of the findings of fact within the administrative record, and as it appears that the "Georgia On My Mind" description is based primarily upon the tree's inclusion on the Urban Forest Council Register, the Court further finds that the failure of the administrative record to include a review of the publication does not constitute an abuse of discretion or show that the Secretary's decision was clearly erroneous.

### 3. The Spanish American War— Camp Churchman

■ The GDOT study found that the area surrounding the Friendship Oak served as "Camp Churchman," a stopping ground for American soldiers to muster out of service from the Spanish American War. The study further found that the establishment of the camp itself, as well as certain of the events transpiring there, were of some local significance at the time. However, no evidence in the administrative record indicated that any particular oak tree in the area served as a significant landscape feature of the encampment.[3] In addition, the study

---

**3.** On May 19, 1997, the Plaintiffs sought to supplement the record with the affidavit of Owen D. Winters. Mr. Winters' affidavit states that as a young boy he heard stories from his grandfather about the elder's service in the Spanish–American War. Mr. Winters recalls being told of a winter spent with the troops at a camp "in Georgia." His grandfather told him that a large tree stood by the commander's tent, and that the tree was remarkable because very few trees populated the immediate area. Mr. Winters recalls being told that the tree was so large that it served as a landmark for the encampment and a point of reference when giving directions. Having learned about the instant litigation, Mr. Winters believes that the encampment spoken of by his grandfather was Camp Churchman, and that the large tree must be the Friendship Oak.

A full year passed between the issuance of the October 1995 preliminary injunction and the filing of the Defendants' motion to dissolve and dismiss. At all times during that period the Plaintiffs were capable of submitting any relevant information to the Defendants for inclusion in the GDOT study. In fact, the parties were brought before the Court for a status conference on June 26, 1996, approximately eight months after the injunction, at which time the Defendants specifically requested that the Plaintiffs provide them with all information relevant to the historicity of the Friendship Oak. The Court admonished the Plaintiffs to comport with the Defendants' request. With a few minor exceptions, the Plaintiffs failed to take advantage of the year-long opportunity to infuse the administrative record with evidence supporting their position in this case. As a result, the Plaintiffs cannot now complain about the failure of the GDOT study, and ultimately the Secretary's decision, to incorporate *every* potential source of information about the tree.

It is improper for the Court to review the decision of the Secretary on the basis of information that was not a part of the administrative record upon which the Secretary acted. Were courts to allow supplements to an administrative record subsequent to the making of an administrative decision, no government agency would ever be able to achieve finality in any decision-making procedure. While it is within the Court's power, in limited circumstances, to remand the § 4(f) determination to the Secretary for further review, Mr. Winters' affidavit is insufficient to

concluded that the area as a whole had lost its integrity as a site of historic significance due to subsequent development of the land, including the construction of a golf course, a subdivision, and commercial development, as well as the impoundment of the two creeks that apparently formed the boundaries of the camp. Based on the lack of evidence of the tree itself having played a significant role in the history of Camp Churchman and the general loss of integrity of the surrounding area, the GDOT study concluded that the Friendship Oak could not convey a sufficient association to Camp Churchman, or the Spanish–American War, to be considered eligible for inclusion on the national register.

The requirements of integrity for eligibility for inclusion on the National Register are set forth in 36 C.F.R. § 60.4. *See supra.* In addition to meeting the requirements of one of the four general categories of historic sites enumerated in that regulation, a site must possess integrity of location, design, setting, materials, workmanship, feeling, and association. A detailed analysis of the integrity of the Friendship Oak and the surrounding area as they relate to Camp Churchman, is set out at pages 43 to 47 of the "Philema Road Oak Tree—Historic Narrative and National Register Eligibility Discussion" attached to Defendants' motion to dissolve and dismiss. A detailed review of this analysis is unnecessary, as the administrative record leaves no questions about whether the area that comprised Camp Churchman has been completely altered by commercial development.

The Court cannot help but question, however, the reasoning of the Defendants' ultimate argument on this issue, which essentially is: Since, in the time after the disappearance of Camp Churchman, man has destroyed or altered everything that surrounds the Friendship Oak, the tree can no longer convey any significant historic value in that regard. Such reasoning is circular and would always leave the last remaining vestige of times passed unprotect- ed from the pressures of continuing commercial development. Faced with the same circumstances, a very different conclusion could be reached by asking the converse of the Defendants' argument, to wit: Since the Friendship Oak is the singular, remaining fragment, natural or man-made, of what once was Camp Churchman, is it not the only site that can truly convey any association with that chapter of Albany's history?

■ In response to this question, the Defendants have from the beginning of this litigation maintained the position that a single tree, standing alone and without human alteration cannot convey historic value and thus cannot qualify for the National Register. The Court rejected this argument in the October 1995 injunctive order, but the administrative record presently before the Court is replete with comments by various officials to the effect that a single, unaltered tree cannot qualify for the National Register. In support of this position, the Defendants conducted a survey of all "tree" listings currently on the National Register. Only four of the approximately 65,000 listings reviewed were determined to be single trees, and two of them had been altered in some fashion by humans. The other two trees, while unmarked by humans, had a well documented history of direct and significant involvement in the ceremonial and/or judicial practices of two separate Native American societies. The inclusion of these two trees appears to preclude the argument that single, unaltered trees cannot qualify for the National Register, and there are a litany of hypotheticals that could easily test the Defendants' position on this issue. However, it suffices to say that the relevant statutory language does not even suggest that a single tree cannot qualify for the National Register, and the Court does not accept the Defendants' arguments in this regard.

---

support such an action. The stories recounted by Mr. Winters simply tell of a cruel winter spent in a Spanish–American War encampment that was marked by a large tree somewhere in the state of Georgia. Even if the encampment referred to was Camp Churchman, the entirety of the affidavit is hearsay, and the weight of the evidence contained therein is insufficient to remand this case to the Secretary in the absence of any other concurring, verifiable information. Accordingly, Plaintiffs' motion to supplement the record should be, and hereby is, **DENIED.**

On the other hand, a tree, like any other site or object, must inhere the appropriate historic characteristics and associations, defined in 36 C.F.R. § 60.4, to qualify for inclusion on the National Register. As with the Native American tribal trees discussed above, these historic qualities must, to some degree, be verifiable. As previously discussed, the Defendants undertook an extensive study in this regard and were unable to find evidence of any direct association between the Friendship Oak and Camp Churchman. As a result of this lack of a direct association, the administrative record presented the Secretary with a troublesome question. On the one hand, the tree is all that remains of Camp Churchman. On the other hand, the tree does not appear to have played any more significant role in the events at Camp Churchman than did the dirt on the ground or the air in the sky. How much historic value does an object inhere by merely standing witness to the events of history while not playing a direct role in those events? The law, as it stands, does not answer this question, but rather relies on the wisdom of elected and appointed officials to apply the general guidelines discussed herein on a case-by-case basis. While the Court cannot say that the Secretary's decision in this case was wise, it also cannot find that the decision was illegal on the basis of the tree's relationship to Camp Churchman. Without any direct association between the tree and the camp, the law does not *require* a finding of eligibility for the National Register under 36 C.F.R. § 60.4.

### 4. Present Day Local Significance

To a small degree the GDOT study examined the local significance of the tree to area residents. GDOT discovered that at least some residents agree that the tree that is the subject of this litigation is not the true "Friendship Oak." According to such residents, the true Friendship Oak was located in the same vicinity but was either destroyed by fire in the 1960s or cut down during the construction of the Liberty Expressway in the 1970s. The GDOT study also found that while there is significant local sentiment for the tree, as evidenced by the intense, local debate that has surrounded this litigation, the City Commissioners have refused to designate the tree as a site of local historic significance. Thus, the conclusion of the GDOT study is that the current popularity of the Friendship Oak among many members of the local community is not dispositive on the issue of historic preservation as the tree has neither been officially recognized as a site of local historic value nor acknowledged by an extended *history* of local public support.

■ In opposition to the Defendants' motion to dissolve and dismiss, the Plaintiffs contend that the failure of the Albany City Commissioners to designate the tree as a site of local, historic significance is not dispositive on the issue of the applicability of § 4(f). The Plaintiffs conversely argue that the Secretary was *required* to apply § 4(f) to the Friendship Oak due to the passage of a resolution by the Dougherty County Board of Commissioners recognizing the value of the tree to local citizens.

In support of each of these arguments, the Plaintiffs look to *Stop H–3 Association v. Coleman,* 533 F.2d 434 (1976). In *Stop H–3,* the State of Hawaii planned to build a Federal–Aid Highway through the Moanalua Valley. *Id.* at 436. A private group petitioned the Secretary of the Interior to have the valley placed on the National Register. *Id.* at 439. Although the Secretary of the Interior found that the valley "had not been conclusively demonstrated to be of *national* historic significance," he nevertheless found the valley eligible for inclusion on the National Register due to the valley's *local* historic and cultural value. *Id.* (emphasis added). Subsequent to the Secretary of the Interior's determination, the Hawaii Historic Places Review Board issued a finding that the valley was only of "marginal" local significance and undeserving of protection. *Id.* at 439–440. The Court of Appeals for the Ninth Circuit held that the jurisdiction of the Secretary of the Interior under § 4(f) was not limited to sites of national historic significance, but rather that it extended to sites of state or local significance as well:

If it should be held that the Interior Secretary has no power to determine that properties have state or local historic significance, there would, in our view, be a

virtual nullification of the NHPA and Section 4(f).... Whenever a city or state preferred a federally-funded highway to an historic site, the local body could simply declare the site insignificant. Such a holding would be without precedent and would completely defeat Congress's clear attempt to protect such properties by passing NHPA and 4(f).

*Id.* 441 n. 13. *See also Named Individual Members v. Texas Highway Dep't,* 446 F.2d 1013, 1025–27 (5th Cir.1971), *cert denied,* 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972) (section 4(f) applicable notwithstanding city officials' finding that city-owned parkland was of "secondary" importance to the construction of a freeway).

Thus, the Plaintiffs in the present case are correct in arguing that the refusal of the Albany City Commissioners to designate the Friendship Oak as a sight of local historic significance is not dispositive on the question of whether the tree merits § 4(f) protection on the basis of local historic significance.

The Plaintiffs conversely argue that the resolution of the Dougherty County Commissioners, identifying the Friendship Oak as a site of "significant value" to the community, triggers the protections of § 4(f). In *Stop H–3,* the Ninth Circuit explained that a finding of local significance by the appropriate local official or tribunal could bind the Secretary of the Interior under § 4(f)'s disjunctive language. In other words, "if *any* of the officials having jurisdiction to determine that a site has national, State, or *local* historic significance, so decides then section 4(f) applies." *Stop H–3, supra,* 533 F.2d at 441 (emphasis added). Such an argument raises two questions. The first is whether the Dougherty County Commissioners have "jurisdiction" under § 4(f) to determine whether the Friendship Oak has local historic significance. That question need not be answered today, for the resolution itself is insufficient to bind the Secretary in the present case.

To begin with, the resolution is based in part on the finding that "the intersection has its beginning as an Indian trail and continued usage as a stagecoach road from Florida to Virginia...." As discussed previously, such assertions were not borne out by the in-depth examinations conducted as a part of the GDOT study. Further, the resolution denotes no other association between the tree and any significant historic context. Most damaging to the Plaintiffs' position, however, is the specific language and intent of the resolution. While the resolution states that the tree has "significant value," nowhere does the resolution refer to the Friendship Oak as a site of such significant local historic value as to warrant any type preservation effort. In fact, the very purpose of the resolution was to place a dollar value ($61,156.00) on the tree and to request that GDOT fund half of the tree's "replacement cost." To construe such a resolution as establishing that the Friendship Oak holds the type of irreplaceable historic and cultural values that § 4(f) seeks to protect is illogical and runs squarely in the face of the resolution's plain language and intent. Therefore, the Secretary is not bound by virtue of the Dougherty County Commissioners' Resolution to provide § 4(f) protections to the Friendship Oak.

The Plaintiffs also argue that the Secretary abused his discretion by refusing to accept and review as a part of the administrative record petitions supporting preservation of the tree. However, these petitions do not address any issue about the tree's historic significance. Rather the petitions are a measure of local popularity and sentiment for the tree. While the Secretary may choose to weigh such issues in his decision-making process, he is not required to do so. As summarized throughout this order, the Secretary's decision was based upon an extensive, fact-intensive administrative record that spoke to the actual history of the Friendship Oak rather than a perceived history based upon hearsay and misinformation. As the regulations governing eligibility for the National Register speak *only* to qualities of historic significance, the current popularity of the tree; in the absence of an official finding of local significance by an entity with jurisdiction to make such a finding, is of minimal relevance.

It is of course ironic that if the Friendship Oak were preserved as a result of this litigation, even without a finding of National

Register eligibility, the very nature of the community's fight to save the tree and the surrounding media coverage of the same could perhaps sufficiently enhance the tree's local historic status to the level required for National Register eligibility. However, the purpose of § 4(f) is to protect, among other things, those sites and objects that have achieved a requisite level of historic significance and integrity at the time that a relevant, federally-funded project is presented for administrative review. Section 4(f) is not to a tool to be used to create historic significance.

For the foregoing reasons, the Court finds that the Secretary's decision that the Friendship Oak is not eligible for the National Register was not arbitrary, capricious or an abuse of discretion.

**B.** *The Secretary's Decision not to Exercise Discretion to Protect the Tree*

 As discussed earlier, 23 C.F.R. § 771.135(e) mandates that § 4(f) protections only be applied to sites on or eligible for the National Register "unless the Administration determines that the application of section 4(f) is otherwise appropriate." Thus, should the Secretary conclude that the Friendship Oak is neither on nor eligible for the National Register, then it is solely within the Secretary's discretion to decide whether to provide § 4(f) protection to the tree anyway. Such "committed-to-agency-discretion" is different than the discretion that the Secretary is vested with to interpret the law. As the entire, preceding portion of this opinion demonstrates, when there is "law to apply," the discretion of an agency to interpret that law is subject to judicial review at the "abuse of discretion" standard. *See Overton Park, supra,* 401 U.S. at 413, 91 S.Ct. at 822. However, when there is no law to apply, or in other words when an agency is vested with unfettered discretion, as is the case with the final clause of § 771.135(e), then the Court is precluded from reviewing the exercise of that discretion. 5 U.S.C. § 701(a)(2) (precluding judicial review under the APA for agency action committed to agency discretion by law). In such cases Congress has specifically left the relevant decision to the judgment of the agency, in this case to the Secretary of the Department of Transportation.

**C.** *Procedure Was Properly Followed*

The procedure for identifying historic properties is set forth at 36 C.F.R. § 800.4. This regulation states in relevant part:

(c) Evaluating historical significance.

(1) In consultation with the State Historic Preservation Officer and following the Secretary's Standards and Guidelines for Evaluation [48 FR 44716], the Agency Official shall apply the National Register Criteria to properties that may be affected by the undertaking and that have not been previously evaluated for National Register eligibility. The passage of time or changing perceptions of significance may justify reevaluation of properties that were previously determined to be eligible or ineligible.

(3) If the Agency Official and the State Historic Preservation Officer agree that the criteria are not met, the property shall be considered not eligible for the National Register. . . .

In the present case, GDOT provided the U.S. Department of Transportation, Federal Highway Administration with an extensive review of the historicity of the Friendship Oak. The USDOT then conducted an independent review of this information, and USDOT also forwarded the information to the State Historic Preservation Division of the Georgia Department of Natural Resources. Both USDOT and the State Historic Preservation Division independently concluded that the Friendship Oak is not eligible for the National Register. Upon these findings, the Secretary has made an independent judgment that the Friendship Oak is not eligible for the National Register, and concurrently declined to exercise his discretion under 23 C.F.R. § 771.135(e) to provide § 4(f) protection for the tree. *See Defendants' Motion to Dissolve and Dismiss* at 3–4.

Accordingly, the Defendants have properly followed the procedures set forth for identification and protection of historic properties pursuant § 4(f) and all applicable regulations.

### D. *Conclusion*

As stated, the role of the Court in this action is to ensure that the procedures set forth by Congress for implementing a policy of national concern have been properly followed by the Defendants. For the foregoing reasons, the Court finds (1) that the Defendants properly followed the procedures for evaluating the historicity of the Friendship Oak, (2) that the Secretary's determination that the Friendship Oak is not eligible for inclusion on the National Register was not arbitrary, capricious, or an abuse of discretion, and (3) that the Secretary's decision not to exercise his unfettered discretion under 23 C.F.R. § 771.135(e) to provide § 4(f) protection for the Friendship Oak is not properly reviewable by this Court.

While the Court finds that the decision made by the Secretary was legal, it is not for this Court to determine if that decision was wise in the face of local public interest in preservation. Clearly, the Secretary was not powerless to leave the Friendship Oak standing despite a finding that its historicity was insignificant. How to respond to the efforts of local citizens and interested parties to save the tree in the face of commercial development was a choice for the Secretary and locally elected officials. They have made their decision. The wisdom of that decision is ultimately left to the consideration, observation and evaluation of present and future generations in the absence of the shade of the Friendship Oak.

Accordingly, Defendants' motion to dissolve and dismiss should be, and hereby is, **GRANTED.** The preliminary injunction entered by the Court on October 26, 1995 in the above-styled action is **DISSOLVED** as of June 12th, 1997 at 10:50 a.m. It is **FURTHER ORDERED** that the above-styled action is hereby **DISMISSED.**